**In re G. L. MILLER & CO., Inc.**

**Appeal of INDEPENDENCE INDEMNITY CO.**
No. 36.

Circuit Court of Appeals, Second Circuit.
Nov. 10, 1930.

R. A. Mansfield Hobbs, of New York City (Samuel Lewis, of New York City, of counsel), for appellant.

Goldmark, Bennitt & Colin, of New York City (Godfrey Goldmark, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The appellant's original petition sought reclamation of sums of money paid to the bankrupt by "mortgagors, bondholders or other persons" for specific purposes. It charged that such sums had come into the hands of the trustee in bankruptcy and were impressed with a trust to be used for the purposes specified. There were three classes of items: (1) Sums totaling $697.50 paid to the bankrupt for the purpose of paying "premiums on bonds issued by the petitioner at the request of said G. L. Miller & Company," guaranteeing payment of principal and interest of certain first mortgage bonds; (2) a sum of $325 paid to the bankrupt for the purpose of paying interest due August 15, 1926, on "Castle Hill" bonds owned by appellant; (3) sums in an amount unascertainable without an audit of the bankrupt's books, paid to the bankrupt for the purpose of paying principal or interest of mortgage bonds guaranteed by appellant. The relief asked was payment to appellant of items 1 and 2, and, as to item 3, payment to appellant or to the bondholders to whom appellant might be liable under its guaranty. Thus it is apparent that appellant sought as owner to trace the first two items and sought as surety of certain mortgagors to trace money belonging to the guaranteed bondholders. Hence the petition, after dismissal as a reclamation claim, stood as a general claim asserting, with respect to items 1 and 2, an indebtedness to the appellant based on the bankrupt's failure to pay over money received for appellant's account, and, with respect to item 3, an indebtedness to bondholders based on the bankrupt's failure to pay over money received for their account.

By stipulation, the general claim as to premiums (item 1) was allowed in the sum

116

claimed $697.50, and was disallowed as to "Castle Hill" interest, item 2. There was no stipulation with respect to the disposition of the general claim as to indebtedness to guaranteed bondholders, item 3. Under section 57i of the Bankruptcy Act (11 USCA § 93(i), if such bondholders failed to prove their claims, the appellant as guarantor of the bonds was entitled to make proof in the names of the bondholders. The original petition set forth neither their names nor the amounts due them. Whether such facts could be added by amendment after expiration of the statutory six months for proving claims, we need not now consider, because the proposed amendment, refusal of which is the sole error assigned, contains no reference to any such indebtedness; nor is any contention presented that appellant should have been permitted to make proof in the right of any guaranteed bondholder.

The indebtedness asserted in the proposed amendment is based upon a written agreement made in May, 1925, by which the bankrupt agreed to indemnify appellant against expense or liability it might incur by issuing bonds or guaranties at the request of the bankrupt. It is then alleged that appellant thereafter, at the bankrupt's request, guaranteed payment of principal and interest of various mortgage bonds sold through the bankrupt, and that certain mortgagors defaulted, and appellant had been obliged to make good their defaults to the extent of several hundred thousand dollars, the details of such defaults and of appellant's payments under its guaranties being set out in extenso.

■ It is clear that this is an entirely different cause of action from that alleged in the original claim. The obligation there asserted was for money had and received by the bankrupt for the use of appellant or of persons to whose rights appellant was subrogated. The obligation now asserted is upon an express agreement of indemnity of which there was no mention in the original claim. It is true that the original claim alleged that appellant had guaranteed first mortgage bonds underwritten and sold by the bankrupt, but those bonds were made by third persons, the mortgagors, so there was nothing to indicate that the bankrupt owed appellant any duty to indemnify it as surety. In the paragraph relating to sums received by the bankrupt for the purpose of paying premiums (item 1 above), the bonds are described as "issued by the petitioner (appellant) at the request of said" bankrupt. This again implies no duty

of indemnification, since the bankrupt was neither the principal nor a cosurety on the guaranteed obligation. Hence the question presented is whether there may be substituted by amendment after the expiration of the statutory six months a wholly new and different cause of action of which no intimation whatever was given in the original claim.

■ It is urged by appellant that the trend of modern decisions is to allow great liberality in the amendment of claims in bankruptcy. So it is; but it is to be noted that the authorities cited as indicating this liberal tendency deal with situations which fall short of that here presented. They permit amendments to correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings. See Globe Indemnity Co. v. Keeble, 20 F.(2d) 84 (C. C. A. 4); In re Fant, 21 F.(2d) 182 (D. C. W. D. S. C.); In re Atlantic Gulf & Pac. S. S. Corp., 26 F.(2d) 751 (D. C. Md.); In re Kardos, 17 F.(2d) 706, 708 (C. C. A. 2); In re Kessler, 184 F. 51 (C. C. A. 2); Scottsville Nat. Bank v. Gilmer, 37 F.(2d) 227 (C. C. A. 4). It is quite another matter to use an "amendment" as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed. The distinction has been recognized by high authority. In Hutchinson v. Otis, 190 U. S. 552, 555, 23 S. Ct. 778, 47 L. Ed. 1179, where it was contended that no amendment was allowable after the prescribed period, attention was called to the fact that "the claim upon which the original proof was made is the same as that ultimately proved," and the analogy was noted to the principle which permits an amendment setting up the same cause of action after the statute of limitations has run, when the original declaration was bad. See, also, In re G. L. Miller & Co., 35 F.(2d) 966 (D. C. S. D. N. Y.), affirmed (C. C. A.) 35 F.(2d) 968; Remington, Bankruptcy (3d Ed.) § 893; Collier, Bankruptcy (13th Ed.) p. 1141. If the limitation imposed by section 57n, as amended by Act May 27, 1926, § 13 (11 US CA § 93(n), is to be given any reasonable meaning, we think it must be true that the right to amend can go no further than to permit the bringing forward and making effective of that which in some shape was as-

serted in the original claim. In re Kardos, supra, lays down no different rule, for the court there said that "the original proofs are loosely drawn, and might be read as demands against both estates." In the case at bar we can find nothing in the original claim to serve as the basis for the proposed amendment. No facts were alleged and no indebtedness asserted which would give the trustee in bankruptcy notice of the existence of any indemnity obligation, either by law or by express agreement. Consequently the proposed amendment was properly refused.

Order affirmed.