RANDALL, Circuit Judge:
 

 The First National Bank of Mobile (hereinafter referred to as the Mobile bank) appeals from the decision of the district court denying the motion of the Mobile bank for leave to file an amended claim in a Chapter X proceeding
 
 [1]
 
 approximately three years
 
 *417
 
 and four months after the bar date fixed by the district court pursuant to Bankruptcy Rule 10-401(b)(l).
 
 [2]
 
 We reverse.
 

 On June 24, 1974, Commonwealth Corporation (hereinafter referred to as Commonwealth) filed a petition pursuant to Chapter X of the Bankruptcy Act of 1898. On September 9,1974, the district court entered an order pursuant to Rule 10-401(b)(l) providing that all claims must be filed within thirty days from the date of the mailing of an appropriate notice by the Trustee appointed by the district court in the proceedings. Pursuant to such order, notice was mailed to the Mobile bank requiring the filing of a claim within 30 days from September 18, 1974. On October 18, 1974, the Mobile bank filed a proof of claim
 
 [3]
 
 which provided, in relevant part, as follows:
 

 2. That [Commonwealth] was at the time of the filing of its petition for a reorganization on June 25, 1974, and still is, justly and truly indebted or liable to [the Mobile bank] for the following sums:
 

 (b) On August 29, 1973, [the Mobile bank], at the request of [Commonwealth], loaned C. K. Marshall & Company [hereinafter referred to as Marshall] the sum of $465,000.00 to allow Marshall to make improvements to real property [hereinafter referred to as the Florida property] located in Okaloosa County, Florida. To evidence said loan Marshall executed and delivered to [the Mobile bank] a note in the amount of $465,000.00, and secured the same by executing and delivering to [the Mobile bank] a mortgage [hereinafter referred to as the Mobile bank mortgage] on [the Florida property], said mortgage having been recorded in the official records of Okaloosa County. Said note was not paid when due. On June 14, 1974 [Commonwealth] delivered to [the Mobile bank] its check in the amount of $465,000.00 and thereby induced [the Mobile bank] to execute a cancellation of [the Mobile bank mortgage]. Thereafter [Commonwealth] caused Marshall to execute a new mortgage [hereinafter referred to as the Commonwealth mortgage] to [Commonwealth], apparently without adequate consideration, and immediately thereafter sold said note and [the Commonwealth mortgage] to Greenwich Savings Bank of New York [hereinafter referred to as Greenwich]. [Commonwealth’s] check for $465,-000.00 payable to [the Mobile bank] was subsequently dishonored because of insufficient funds, and [the Mobile bank] has commenced an action against Marshall, Greenwich
 
 *418
 
 and The Lewis State Bank [hereinafter referred to as Lewis bank] in The United States District Court for the Northern District of Florida, Tallahassee Division, requesting that the court set aside [the Mobile bank’s] cancellation of [the Mobile bank mortgage], reinstate [the Mobile bank mortgage] from Marshall to [the Mobile bank], and declare that [the Commonwealth mortgage] from Marshall now held by Greenwich is subordinate to [the Mobile bank mortgage]. Attached is a copy of the complaint filed in said proceedings.
 

 In the event [the Mobile bank] is unsuccessful in such litigation, [the Mobile bank] shall have the right to assert a claim against [Commonwealth] for the amount of [Commonwealth’s] check refused because of insufficient funds in the amount of $465,000.00. A copy of said check is attached hereto and made a part hereof.
 

 3. No part of the above named liabilities have been paid.
 

 4. There are no set-off or counterclaims to said debts or liabilities.
 

 5. To the extent that [the Mobile bank] has security for the debts described above, this claim is filed as a secured claim; to the extent that any portion of said debt is unsecured, this claim is filed as a priority claim; and to the extent that this claim is neither a secured or priority claim, it is filed as an unsecured claim.
 

 The Mobile bank attached to its proof of claim a copy of the complaint
 
 [4]
 
 against Marshall, Greenwich and Lewis bank referred to in such proof of claim.
 

 The Trustee proceeded to dispose of the other claims in the Chapter X proceeding (approximately 1,920 claims were originally filed therein) while the litigation by the Mobile bank against Marshall, Greenwich and Lewis bank proceeded to judgment. On July 29, 1977, the court in which such litigation was pending entered an order rescinding and expunging from the public record the satisfaction of the Mobile bank mortgage and reinstating the Mobile bank mortgage, declaring that Marshall owed the Mobile bank on the note secured by the Mobile bank mortgage $465,000, plus interest, and cancelling the Commonwealth mortgage. On January 3, 1978, the appeal which was taken from the entry by the court of such order was voluntarily dismissed. Shortly thereafter, on February 14, 1978, the Trustee filed objections to Commonwealth’s proof of claim and requested that such claim be disallowed in full. As a basis for the disallowance, the Trustee alleged that (i) there were no amounts due and owing by Commonwealth to the Mobile bank arising out of the transaction referred to in the proof of claim, (ii)
 
 *419
 
 the Mobile bank failed to “conform with all of the conditions precedent which would give rise to further obligation on the part of Commonwealth ... to make a loan to [the Mobile bank]” and (iii) the Mobile bank, having prevailed in the litigation and having thereby secured the Florida property, was not entitled to a deficiency against Commonwealth.
 

 On February 27, 1978, the Mobile bank filed the motion for leave to file an amended claim which is the subject of this appeal. As grounds therefor, the Mobile bank asserted that the original claim does not accurately set forth the precise factual situation and that the Mobile bank had ascertained additional facts in the discovery which had taken place in its suit against Marshall, Greenwich and Lewis bank. The proposed amended claim is for the same amount as the original claim and contains the same basic factual allegations as the original claim, together with the additional factual allegation that the loan from Commonwealth to Marshall was made “subject to a take-out commitment from [Commonwealth], whereby [Commonwealth] agreed to repay [the Mobile bank] in the event the loan was not repaid by Marshall. The note in question was not paid when due, and [the Mobile bank] demanded that [Commonwealth] honor its take-out commitment.” The proposed amended claim stated that the Mobile bank had instituted proceedings to foreclose the Mobile bank mortgage on the Florida property, but that the collateral was believed to be insufficient adequately to secure repayment of the indebtedness owed by Marshall to the Mobile bank. In addition, the proposed amended claim stated that Marshall had been dissolved and at the time of the dissolution was insolvent. The Mobile bank, in the proposed amended claim, described its claim against Commonwealth as a claim “based upon [Commonwealth’s] breach of its take-out commitment to [the Mobile bank].” A hearing was held before a special master on the Mobile bank’s motion for leave to file an amended claim during which counsel for the Mobile bank indicated that no written take-out commitment was known to exist and that the Mobile bank would rely on a verbal take-out commitment.
 

 On April 13, 1978, the district court entered an order denying the Mobile bank’s motion, citing
 
 In re G. L. Miller & Co.,
 
 45 F.2d 115 (2d Cir. 1930), and
 
 In re Keck,
 
 23 F.Supp. 121 (W.D.Pa.),
 
 aff’d sub nom. C.I.T. Corp. v. Himes
 
 (In
 
 re Keck),
 
 98 F.2d 589 (3d Cir.),
 
 cert. denied,
 
 305 U.S. 646, 59 S.Ct. 148, 83 L.Ed. 417 (1938). The district court held that the proposed amendment sought to establish a new cause of action based upon the breach of an oral take-out commitment, as distinguished from the original cause of action for the dishonored check. The district court denied the amendment on several additional grounds. The first was that the original claim contained an election on the part of the Mobile bank not to proceed against Commonwealth if it were successful in its litigation against Marshall, Greenwich and Lewis bank. The court stated that the Mobile bank had received all the relief that it was seeking in that litigation. The second additional ground for the district court’s decision was that there was nothing in the original claim to place the Trustee on notice that the Mobile bank would assert any other basis for a claim in the proceedings. The information with respect to the alleged verbal take-out commitment was exclusively in the possession of the Mobile bank for three years and four months since the filing of the original claim. Finally, the third additional ground for the decision was that prejudice to the creditors of Commonwealth might occur if full scale litigation ensued between the Trustee and the Mobile bank over the alleged take-out commitment.
 

 On appeal, the Mobile bank asserts that the district court abused its discretion in failing to permit the Mobile bank to amend its claim. The Mobile bank argues that the essential facts relating to the involvement of Commonwealth in the transaction in question were specified in the original claim, except that the original claim did not explain with particularity why Commonwealth had delivered the check in the
 
 *420
 
 amount of $465,000 to the Mobile bank. The purpose of the proposed amendment was to supply the particularity or detail missing from the original claim but consistent with it. The Mobile bank argues further that the original claim did not constitute an election to pursue the claim only if it lost the lawsuit referred to in the original claim. To the extent that the Mobile bank was unable to recover the full amount of the indebtedness that was the subject of the take-out commitment, it argues that it has been unsuccessful in the suit and is therefore entitled, under the terms of the original claim, to proceed against Commonwealth. Finally, the Mobile bank asserts that the allowance of the proposed amendment would not prejudice the other creditors of Commonwealth.
 

 In a straight bankruptcy proceeding, as distinguished from a Chapter X proceeding, an amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.
 
 [5]
 
 An amendment subsequent to the time allowed by Section 57n of the Bankruptcy Act, 11 U.S.C. § 93(n),
 
 [6]
 
 for filing proofs of claim — generally, not later than six months after the first meeting of creditors — -calls for careful scrutiny, however, in order to make sure that the amendment does not amount to an attempt to file an entirely new claim after the time for filing claims has expired.
 
 [7]
 
 Generally speaking, such an amendment will be allowed if enough has been presented in the original claim to show that a demand is being made against the bankrupt’s estate and that it is the creditor’s intent to hold the estate liable.
 
 [8]
 
 One of the most common reasons for allowing an amendment to a proof of claim has been to permit the creditor to state the claim with greater particularity, subject, of course, to the limitation that the creditor may not, in so doing, assert an entirely new claim.
 
 [9]
 

 
 *421
 
 As we have noted, this is a Chapter X proceeding. In a Chapter X proceeding, Section 57n, 11 U.S.C. § 93(n),
 
 [10]
 
 is not applicable and Rule 10-401(b) applies instead. Under that Rule, the judge fixes applicable, which has not been done in this the time within which proofs of claim are to be filed, and he has specific authority to extend the time so fixed, as the equities of the situation may require. This flexibility is in keeping with Chapter X’s policy to preserve creditors’ rights, and is discussed in the Advisory Committee’s Note to Rule 10 — 401(b) as follows:
 

 If the court has fixed a bar date for the filing of proofs of claim, it may still enlarge that time within the provisions of Bankruptcy Rule 906(b) which is made applicable in this subdivision.
 
 This policy is in accord with Chapter X generally which is to preserve rather than to forfeit rights.
 
 In § 102 it rejects the notion expressed in § 57n of the Act that claims must be filed within a six-month period to participate in any distribution. Section 224(4) of Chapter X of the Act permits distribution to certain creditors even if they fail to file claims and § 204 fixes a minimum period of 5 years before distribution rights under a plan may be forfeited. This approach was intentional as expressed in Senate Report 1916 (75th Cong., 3d Sess., April 20, 1938):
 

 “Sections 204 and 205 insure participation in the benefits of the reorganization to those who, through inadvertance or otherwise, have failed to file their claims or otherwise evidence their interests during the pendency of the proceedings.”
 

 This attitude is carried forward in the rules, first by dispensing with the need to file proofs of claims and stock interests in most instances and, secondly, by permitting enlargement of the fixed bar date in a particular case with leave of court and for cause shown in accordance with the equities of the situation.
 

 (Emphasis added). Chapter X’s policy to preserve creditors’ rights and the flexibility accorded the judge in fixing the bar date and in modifying it would suggest the propriety of an even more liberal approach with respect to allowing amendments for equitable reasons than that which prevails in straight bankruptcy proceedings.
 

 The reason for liberality in permitting a late-filed amendment to a proof of claim, subject to the restrictions described above, is that “[a] bankruptcy court . sits as a court of equity, duty bound to examine each claim to see that injustice is not done and that all claims are fairly considered.”
 
 Leach v. SBA (In re Crown Cabinets., Inc.),
 
 488 F.2d 91, 92 (5th Cir. 1973). The Supreme Court described the equity powers of bankruptcy courts and the objectives of the use of such equity powers as follows:
 

 The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.
 

 Pepper v. Litton,
 
 308 U.S. 295, 304-05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (footnote omitted).
 

 Viewed from the perspective of the foregoing rules and principles, the district court’s decision denying the Mobile bank permission for leave to amend cannot stand. Conscious of the prohibition against asserting an entirely new claim in the guise of an amendment, the court characterized the proposed amended claim as a new claim, based on breach of an oral take-out commitment, as distinguished from the original claim, which the court characterized as a claim on a dishonored check. First, we do not agree that the original claim can be characterized simply as a claim on a dishonored check. It seems to us to be more fairly characterized as a claim for indebtedness of Commonwealth to the Mobile bank in the
 
 *422
 
 amount of $465,000 arising out of the transaction described at some length in the original claim. Probably the most persuasive evidence of the accuracy of our characterization of the claim as one on the underlying indebtedness is the objection to the proof of claim filed by the Trustee (before the amended proof of claim was proposed) which is clearly addressed to the underlying obligation.
 
 [11]
 
 Expressed somewhat differently, whether the original claim was in fact only a claim on the dishonored instrument or was instead a claim on the underlying obligation, the battle lines were certain to be drawn, and were in fact drawn by the Trustee, on the existence and validity of the underlying obligation. The proposed amendment, which states with greater particularity the circumstances under which that obligation allegedly arose, falls clearly within the class of amendments to proofs of claim most commonly allowed to be filed.
 
 [12]
 

 
 *423
 
 As an alternative ground for its holding, the district court held that the original claim would not have put the Trustee on notice of the existence of the alleged verbal take-out commitment, a fact within the knowledge of the Mobile bank at the time the original claim was filed. This ground for the court’s decision appears to be based on the premise that the Trustee will be unduly handicapped in defending against the claim because an item of relevant information was omitted from the original claim and called to his attention only at a later date.
 
 [13]
 
 We note, however, that the original claim described the transaction out of which the indebtedness of Commonwealth to the Mobile bank allegedly arose in considerable detail, more than enough detail to enable the Trustee to identify the transaction and effectively to discharge his duty under Rule 10 — 401(d) to examine the claim and to object thereto.
 
 [14]
 
 When the original claim has been set forth in this kind of detail, the amendment process is often used because it is particularly well-suited to filling in any gaps.
 

 As a further ground for its holding, the district court held that the original claim had contained an election on the part of the Mobile bank not to proceed against Commonwealth if it were “successful” in its litigation against Marshall, Greenwich and Lewis bank. The district court characterized the Mobile bank as successful in that litigation on the ground that it had received all the relief which it had requested. The proposed amended claim states that the collateral (the Florida property) for the Mobile bank mortgage securing the indebtedness of Marshall is believed to be insufficient and that Marshall is insolvent. To characterize the Mobile bank as successful in the Marshall litigation, when it appears that it will emerge empty-handed from that litigation, and to employ that characterization to disallow the Mobile bank’s claim is to penalize a creditor which has diligently pursued another avenue for collecting its debt — a route which would have benefited Commonwealth had it been successful — instead of simply making a claim against Commonwealth. This is not the substantial justice contemplated by the Supreme Court in
 
 Pepper v. Litton.
 
 We hold, therefore, that the original claim indicated an intent to hold Commonwealth liable for the amount of any deficiency.
 

 We turn to the final ground set forth by the^ district court for its decision, namely, that prejudice to the other creditors of Commonwealth might occur if full-scale litigation ensues between Commonwealth and the Mobile bank. The record indicates that this ease has been proceeding on the theory that substantially all the claims would be resolved before a plan of reorganization would be devised. As was indicated above, while the Mobile bank was engaged in liti
 
 *424
 
 gating its claim against Marshall, Greenwich and Lewis bank, the Trustee proceeded to dispose of virtually all of the almost 2,000 claims filed in the Chapter X proceeding. The fact that the Mobile bank’s claim might erupt into full-scale litigation, thereby delaying the proceedings, does not distinguish it from any of the other claims in the case and certainly does not, in and of itself, constitute the kind of prejudice that would justify denial of the right to amend the claim. We note that at the time of denial by the district court of the motion for leave to amend, no plan had been filed and no distributions were imminent.
 

 In view of the significant effort which must have been expended in handling all aspects of the Commonwealth proceeding by the Trustee, its counsel and the district court, including resolving almost 2,000 claims in a three-year period, we can understand the dismay of all concerned when the Mobile bank’s claim turned into a major problem. Justice dictates, however, that those creditors whose claims are heard at the end of an extended proceeding should receive the same treatment at the hands of the Trustee, its counsel and the court as was accorded those creditors whose claims were heard at the beginning.
 
 [15]
 

 REVERSED and REMANDED for proceedings consistent with this opinion.
 

 [1]
 

 . Chapter X, concerning corporate reorganizations, formerly appeared at 11 U.S.C. § 501-676 under the now-repealed Bankruptcy Act of 1898. The Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, Title I, § 101, 92 Stat. 2549 (Nov. 6, 1978), codified and enacted the law relating to bankruptcy as new Title 11 entitled “Bankruptcy.” In the 1978 bankruptcy codification, the subjects of former Chapters VIII (railroad reorganizations), X (corporate reorganizations), XI (arrangements concerning unsecured debts) and XII (arrangements by non-corporate debtors concerning secured interests affecting real property), are consolidated for comprehensive and sometimes new treatment in a Chapter 11 (“Reorganization”) beginning at § 1101 in the new Title 11. Section 401(a) in Title IV, Transition, repealed the Bankruptcy Act of July 1, 1898, ch. 541, 30 Stat. 544, which comprised former Title 11 but § 403(a) provid
 
 *417
 
 ed that “A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act [Pub.L. No. 95-598] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.” The effective date for most of the provisions of the new bankruptcy codification was October 1, 1979. Since this proceeding was commenced in 1974, under the former enactment, the provisions of the former statute are applicable to this case. Accordingly, unless otherwise specified, the citations which follow in the footnotes and text will be to the Act and Rules in effect prior to October 1, 1979.
 

 [2]
 

 . Rule 10-401(b)(l) states the time for filing proofs of claim as follows: “A proof of claim may be filed at any time prior to the approval of a plan except that the court may fix a different bar date for the filing of claims on notice as provided in Rule 10-209.”
 

 [3]
 

 . Under Bankruptcy Rule 10-401(a) it is not necessary for the holders of claims which are not disputed, contingent or unliquidated as to amount to file proofs of claim if they are listed and filed with the court pursuant to Rule 10-108. It does not appear from the stipulated record on appeal whether the $465,000 claim which is the subject of this suit was listed by Commonwealth as a debt. In a letter to this court, however, counsel for the Trustee informs us that the $465,000 claim was not a listed debt. Accordingly, under Rule 10-401(b)(l), the Mobile bank had until the bar date fixed by the court to file its proof of claim.
 

 [4]
 

 . The allegations of the complaint may be summarized as follows: On August 29, 1973, the Mobile bank, at the request of Commonwealth, loaned Marshall $465,000 to allow Marshall to make certain improvements to the Florida property. To evidence the loan, Marshall executed and delivered to the Mobile bank a note in the amount of $465,000, secured by the Mobile bank mortgage on the Florida property. The note was not paid when due, and on June 14, 1974, Commonwealth delivered to the Mobile bank a check in the amount of $465,000 drawn on Lewis bank and requested that the Mobile bank execute a cancellation of the Mobile bank mortgage. In accordance with that request, on June 14, 1974, the Mobile bank executed and delivered to Commonwealth the cancellation of the Mobile bank mortgage. On June 18, 1974, Marshall executed and delivered to Commonwealth the Commonwealth mortgage in the amount of $465,000 covering the Florida property. On June 19, 1974, Commonwealth assigned the Commonwealth mortgage to Greenwich. On June 21, 1974, the check delivered to the Mobile bank by Commonwealth was presented for payment to Lewis bank, but payment was refused because of insufficient funds. The filing by Commonwealth of its Chapter X petition ensued on June 25, 1974. On July 3, 1974, the Mobile bank notified Marshall of its election to rescind the cancellation of the Mobile bank mortgage.
 

 The complaint sought a setting aside of the cancellation of the Mobile bank mortgage, reinstatement of the note from Marshall to the Mobile bank, reinstatement of the Mobile bank mortgage and a declaration that the Commonwealth mortgage is subordinate to the Mobile bank mortgage.
 

 [5]
 

 . See
 
 Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.),
 
 164 F.2d 228, 230 (6th Cir. 1947);
 
 In re G. L. Miller & Co.,
 
 45 F.2d 115 (2d Cir. 1930);
 
 In re Fiegel,
 
 22 F.Supp. 364, 365 (S.D.N.Y.1937).
 

 [6]
 

 . Section 57n of the Bankruptcy Act provides as follows:
 

 (n) Except as otherwise provided in this title, all claims provable under this title, including all claims of the United States and of any State or any subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed:
 
 Provided, however,
 
 That the court may, upon application before the expiration of such period and for cause shown, grant a reasonable fixed extension of time for the filing of claims by the United States or any State or any subdivision thereof:
 
 Provided further,
 
 That the right of infants and insane persons without guardians, without notice of the bankruptcy proceedings, may continue six months longer:
 
 And provided further,
 
 That a claim arising in favor of a person by reason of the recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person, may be filed within thirty days from the date of such recovery or avoidance, but if the recovery is by way of a proceeding in which a final judgment has been entered against such person, the claim shall not be allowed if the money is not paid or the property is not delivered to the trustee within thirty days from the date of the rendering of such final judgment, or within such further time as the court may allow. When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time hereinabove prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case.
 

 11 U.S.C. § 93(n).
 

 [7]
 

 .
 
 See Wheeling Valley Coal Corp. v. Mead (In re Warner Coal Corp.),
 
 171 F.2d 916, 920 (4th Cir. 1949) (quoting 3 Collier on Bankruptcy ¶ 57.11 [1], now found at 195 (14th ed. 1977)).
 

 [8]
 

 .
 
 See Sun Basin Lumber Co. v. United States,
 
 432 F.2d 48, 49 (9th Cir. 1970);
 
 Saltser & Weinsier, Inc. v. London Art Furniture Corp. (In re High Point Seating Co.),
 
 181 F.2d 747, 750 (2d Cir. 1950) (quoting 3 Collier on Bankruptcy ¶ 57.11, now found at 208 (14th ed. 1977));
 
 Lacoe v. De Long (In re Hotel St. James Co.),
 
 65 F.2d 82, 83 (9th Cir. 1933);
 
 First National Bank of Woodbury v. West (In re Thompson),
 
 227 F. 981, 983 (3d Cir. 1915).
 

 [9]
 

 .
 
 See generally
 
 3 Collier on Bankruptcy ¶ 57.11 (14th ed. 1977); Herzog,
 
 Bankruptcy
 
 Law—
 
 Modern Trends,
 
 43 Ref.J. 54 (1969).
 

 [10]
 

 .
 
 See
 
 note 6
 
 infra.
 

 [11]
 

 . In his brief, counsel for the Trustee admits with admirable candor that the Mobile bank’s theory concerning a verbal take-out commitment sought to be asserted in the amended claim is not inconsistent with the allegations in the original claim.
 

 [12]
 

 . We find
 
 In re G. L. Miller & Co.,
 
 45 F.2d 115 (2d Cir. 1930), and
 
 In re Keck,
 
 23 F.Supp. 121 (W.D.Pa.),
 
 aff’d sub nom. C.I.T. Corp. v. Himes (In re Keck),
 
 98 F.2d 589 (3d Cir.),
 
 cert. denied,
 
 305 U.S. 646, 59 S.Ct. 148, 83 L.Ed. 417 (1938), the two cases the district court deemed controlling in the instant case, distinguishable and, thus, we do not think they mandate a result contrary to the one we reach. In
 
 Miller,
 
 the appellant’s original petition sought recovery of (1) sums paid to the bankrupt for the purpose of paying “ ‘premiums on bonds issued by the petitioner at the request of [the bankrupt],’ ” (2) a sum paid to the bankrupt for the purpose of paying interest on bonds owned by appellant, and (3) sums paid to the bankrupt for the purpose of paying principal or interest of mortgage bonds guaranteed by appellant. 45 F.2d at 115. The relief sought was payment to appellant of items 1 and 2, and payment to appellant, or to the bondholders to whom appellant might be liable under its guaranty, of item- 3.
 
 Id.
 
 As to item 3, appellant asserted in the original claim an indebtedness to bondholders based on the bankrupt’s failure to pay over money received for their account.
 
 Id.
 
 The proposed amendment regarding item 3 asserted an indebtedness based upon a written agreement, not mentioned in the original claim, by which the bankrupt agreed to indemnify appellant against expense or liability it might incur by issuing bonds or guaranties at the request of the bankrupt.
 
 Id.
 
 at 116. The court viewed the issue presented by these facts as “whether there may be substituted by amendment after the expiration of the statutory six months a wholly new and different cause of action of which no intimation whatever was given in the original claim.”
 
 Id.
 
 In affirming the order denying leave to amend the proof of claim under Section 57n, the court acknowledged that amendment of claims in bankruptcy is liberally allowed, but declined to extend that liberality to a situation where it could “find nothing in the original claim to serve as the basis for the proposed amendment.”
 
 Id.
 
 at 116-17. The court found that “[n]o facts were alleged and no indebtedness asserted which would give the trustee in bankruptcy notice of the existence of any indemnity obligation, either by law or by express agreement.”
 
 Id.
 
 at 117. In the first place, we note that the time for filing proofs of claim in
 
 Miller
 
 was controlled by Section 57n which, as we have pointed out, does not afford as much flexibility as Rule 10-401(b)(l), which governs the time for filing proofs of claim in the case before us. Second, we think the facts demonstrate that the claim sought to be asserted by amendment in
 
 Miller
 
 was more clearly a different claim from that which was originally asserted than that which is sought to be asserted by amendment in the case before us.
 

 In
 
 Keck,
 
 the claimant, in its original proof of claim, set forth a claim against the bankrupt partnership and, in the second paragraph, attempted to make a claim against the estates of the individual partners as follows:
 

 “2. That J. S. Keck and Leslie C. Spindler, individually and as partners trading as Keck’s New Garage, the persons against whom a petition for adjudication in bankruptcy has been filed, were, at and before the filing of said petition, and still are, justly and truly indebted to said C. I. T. Corporation in the sum of $18,803.55.”
 

 23 F.Supp. at 122. The referee ruled against the creditor’s contention that the second paragraph was sufficient to establish a claim against the estates of the individual bankrupts and refused to admit in evidence a written guaranty of one of the partners of the partnership debt.
 
 Id.
 
 He also denied the creditor leave to amend its proof of claim.
 
 Id.
 
 The court sustained the referee’s actions since the original claim made no mention of the written guaranty upon which the claim against the individuals depended and Section 57b of the Bankruptcy Act, 11 U.S.C. § 93(b), required that written instruments upon which claims are founded be filed with the proof of claim.
 
 Id.
 
 Again, we note that
 
 Keck
 
 was decided under the more stringent Section 57n, which does not apply in the case before us. Furthermore, it is not contended that there was a failure to file a written instrument in the Commonwealth proceeding; Mobile bank relies on a verbal take
 
 *423
 
 out commitment. The
 
 Miller
 
 case might also be distinguished on the ground that it involved a failure to file a written instrument, but the court in
 
 Miller
 
 did not cite the failure to file the written indemnity agreement as a basis for its holding.
 

 [13]
 

 . Under Rule 10-401(d), derived from Section 47a(8) of the Act, 11 U.S.C. § 75(a)(8), the trustee has the duty to examine and object to claims. In a Chapter X proceeding, the judge may direct the trustee to investigate and report on all matters relevant to the proceeding or the formulation of a plan, including the debtor’s liabilities. Section 167(1), 11 U.S.C. § 567(1).
 
 See
 
 12 Collier on Bankruptcy ¶ 301.04(1] (14th ed. 1978).
 

 [14]
 

 .
 
 See Leach v. SBA (In re Crown Cabinets, Inc.),
 
 488 F.2d 91 (5th Cir. 1973); 3 Collier on Bankruptcy ¶ 57.03 at 139 (14th ed. 1977) (“Usually failure to set out the consideration in sufficient detail may be corrected by amendment”). In
 
 Crown Cabinets,
 
 the transaction underlying the indebtedness was an “immediate participation” SBA loan entitled to statutory priority. 488 F.2d at 92. The assertion of a priority claim as to the deficiency between the amount of the debt and the value of the security was held sufficient to put the referee on notice that the SBA was asserting a claim entitled to priority.
 
 Id.
 
 The court stated that “had the referee handled the matter equitably, once put on notice by the original claim, he would have inquired into the basis for the asserted priority and determined its validity,” which would have made the late amendment unnecessary or, at least, enabled the referee to “recognize the late amendment as a proper amendment supplying more fully the proof of the original claim rather than a belated assertion of an entirely new claim.”
 
 Id.
 

 [15]
 

 . We emphasize that we intimate no opinion as to the validity of the Mobile bank’s claim.