**In re W.T. GRANT COMPANY, Debtor.**

**Bankruptcy No. 75B1735(TLB).**

United States Bankruptcy Court,
S.D. New York.

Oct. 4, 1985.

---

Weil, Gotshal & Manges by Richard Krasnow, Laurie Binder, New York City, for trustee.

Hahn & Hessen by Gilbert Backenroth, New York City, Abelman, Lavine, Krasny, Gold & Levin by Marvin Krasny, Pittsburgh, Pa., for Gralome Corp.

## DECISION ON OBJECTION TO AMENDED CLAIM OF GRALOME CORPORATION

TINA L. BROZMAN, Bankruptcy Judge.

By application dated July 18, 1985, the trustee ("Trustee") of W.T. Grant Company ("Grant") reinstituted an earlier objection dated June 3, 1978 to a proof of claim filed May 18, 1978 by Gralome Corporation ("Gralome"). A hearing was held on August 27, 1985 at the conclusion of which this court granted the Trustee's application to expunge the Gralome claim as untimely filed; this opinion provides the basis for that decision. The parties agree on the salient facts but disagree as to the conclusions which flow from them.

On October 2, 1975, Grant filed a petition for an arrangement under chapter XI of the former Bankruptcy Act and by order dated April 13, 1976 was adjudged bankrupt. The last date for filing proofs of claim against the Grant estate was January 14, 1977 (the "Bar Date") in accordance with Bankruptcy Act section 57(n) and former Bankruptcy Rule 302(e).

Prior to its bankruptcy, Grant negotiated a financing arrangement with Gralome pursuant to which Gralome acquired and by two net leases demised to Grant two retail stores, one in Homewood, Illinois (the "Homewood Premises") and one in Olean, New York (The "Olean Premises"). Gralome obtained its funds from a consortium of six insurance companies (the "lenders")

with whom it entered into several note purchase agreements and on whose behalf it entered into an indenture of mortgage which, by amendment, covered both the Homewood and Olean Premises. During Grant's tenure as a debtor in possession it rejected the lease for the Homewood Premises (the "Homewood Lease"); thereafter, but before the Bar Date, the trustee rejected the lease for the Olean Premises (the "Olean Lease").

On March 19, 1976, Gralome filed a proof of claim arising from Grant's rejection of the Homewood Lease (the "First Proof of Claim"). At the time that this proof of claim was filed, Grant was still in possession of the Olean Premises. The text of the First Proof of Claim makes no mention of the Olean Lease. A self-styled "statement" accompanying the First Proof of Claim reads at the top:

|  | Gralome Corporation |
|---|---|
| Premises: | Store 328 (9758) |
|  | 3103 West 183rd Street |
|  | Homewood, Illinois |

and identifies the claim as comprising enumerated costs of administration and an unsecured claim. Various exhibits are attached including a portion of the Homewood Lease, notices respecting termination of that lease and surrender of the premises and a title company document. The only reference in the First Proof of Claim to the Olean Lease is that contained in the excerpts from the Homewood Lease itself, annexed as an exhibit to the claim. Specifically, the Homewood Lease defines the term "Olean Lease" [¶ 2] and provides that if there be a default under the Olean Lease, that default will operate as a default under the Homewood Lease [¶ 19.-1(h)].

On May 18, 1978, more than sixteen months after the Bar Date, Gralome filed what it entitled an "Amended Proof of Claim of Gralome Corp. (Claim No. 519092)" ("Amended Claim") which duplicated the First Proof of Claim insofar as

the Homewood Lease was concerned and added claims arising out of the rejection of the Olean Lease. Among the many exhibits annexed to the Amended Proof of Claim was an affidavit of an attorney representing Gralome which states at paragraph 7:

"That as a result of the correspondence with counsel for the trustee, said trustee was aware of the claim for the Olean store and same constitutes an informal filing of a proof of claim pursuant to Bankruptcy Rule 509"

Presumably, the correspondence referred to speaks of a letter to the Trustee's counsel regarding inquiries into various checks issued subsequent to Grant's bankruptcy to the lenders in connection with the Olean Premises. That letter was annexed to the Amended Claim.[1]

By objection dated June 3, 1978, the Trustee objected to the portion of the Amended Proof of Claim as duplicative that restated the First Proof of Claim and to the portion relating to the Olean Premises as time-barred. Pursuant to an order dated June 29, 1978, the Amended Proof of Claim was reduced to $231,920.51; this limited the estate's maximum liability to that portion which related to the Olean Premises while preserving the Trustee's objection that the claim was time-barred. By order to show cause issued July 23, 1985, the trustee renewed his objection to the Amended Claim.

Gralome proffers two arguments in support of its position that its claim is timely. First, it argues that the Amended Claim involves the same cause of action as the First Proof of Claim inasmuch as both the Homewood and Olean Leases were part and parcel of one financing arrangement which arrangement Gralome asserts is evidenced in the leases and the indenture. Neither was Grant a party to this indenture nor was the indenture annexed to the First Proof of Claim filed prior to the Bar Date. The argument runs that since the Homewood and Olean Leases contain cross-de-

---

**1.** The other correspondence with the Trustee annexed to the Amended Proof of Claim postdates the Bar Date and therefore cannot even arguably serve as the basis for an informal claim.

fault provisions constituting a default under one a default under the other, when Grant rejected the Homewood Lease, it defaulted under the Olean Lease but damages resulting from that default were unascertainable (because Grant was still in possession under the Olean Lease); therefore, the Amended Claim merely increased the damages asserted under the First Proof of Claim instead of asserting a new cause of action. Significantly, Gralome did not state in the First Proof of Claim that the claim was unliquidated because of the Olean Lease nor did Gralome file a separate unliquidated proof of claim with respect to the Olean Lease.[2]

Alternatively, Gralome argues that the First Proof of Claim when coupled with correspondence and telephone conversations with the Trustee's counsel constitutes an informal filing subject to later amendment by a formal proof of claim. In particular, Gralome highlights the fact that prior to the rejection of the Homewood Lease Grant issued one check to pay the lease obligations on both premises. Further, an affidavit by Marvin Krasny, counsel for Gralome, states that he recalls his conversation with counsel for the Trustee in June 1976 during which they discussed whether the Olean Premises were occupied or vacated, Krasny's belief that the Homewood and Olean Leases constituted a single financing package and the prospect that Gralome would seek damages respecting the Olean Lease if the property could not be sold or relet.

This court finds that the First Proof of Claim was confined to the Homewood Lease and that the claim therein asserted was separate and distinct from any arising out of the Olean Lease. Further, the court finds that the mere mention of the Olean Premises in the portion of the Homewood Lease annexed as one of the exhibits to the First Proof of Claim coupled with correspondence inquiring about why Grant issued certain checks to the lenders and a conversation with counsel mentioning the possibility that damages may be sought does not amount to an "informal claim" amendable by a subsequently filed formal proof of claim.

*Discussion*

■ In setting a bar date, the court prescribes a statute of limitations which has been characterized as a prohibition and been viewed as peremptory.[3] *In re Brill,* 52 F.2d 636 (S.D.N.Y.), *aff'd per curiam,* 52 F.2d 639 (2d Cir.1931); *see also In re Pigott,* 684 F.2d 239 (3d Cir.1982). Although amendments to proofs of claim should in the absence of contrary equitable considerations or prejudice to the opposing party be freely permitted, *In re Commonwealth,* 617 F.2d 415, 420–21 (5th Cir.1980); *In re Hertz,* 38 B.R. 215, 218 (Bankr.S.D.N.Y.1984), such amendments are not automatic but are allowed, "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Biscayne 21 Condominiums Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.),* 767 F.2d 814, 819 (11th Cir.1985) and cases cited therein;[4] *see also In re G.L. Miller & Co., Inc.,* 45 F.2d 115, 116 (2d Cir.1930). But an absolute prerequisite to allowance of an amendment is the existence of something filed in the bankruptcy court capable of being amended. *South Atlantic, supra,* at 819; *In re International Horizons, Inc.,* 751 F.2d 1213, 1217 (11th Cir.1985); *In re Sems Music Co.,* 24 B.R. 376, 380 (Bankr.M.D.Tenn.1982). As

---

2. Gralome conceded that the damages from rejection of the Olean Lease were ascertainable after the property was sold on May 31, 1977 (affidavit of Marvin Krasny, Esq., sworn to August 22, 1985 at ¶ 18) yet Gralome did not file its Amended Claim until almost one year later.

3. There are exceptions to section 57n of the Act not relevant here.

4. Cases construing current Bankruptcy Rule 3002 which governs the time for filing proofs of claim have equal applicability to cases governed by the Act since both the new and old rules are patterned after section 57n of the Act. *In re Underground Utility Construction Co.,* 35 B.R. 588 (Bankr.S.D.Fla.1983).

the Second Circuit recognized in *Miller, supra,* 45 F.2d at 116, it is wholly inappropriate to use an amendment as a device for filing after the statutory period a claim based on a cause of action of which no notice whatever had been given the trustee by anything previously filed.

■ Gralome's first argument, that the Amended Claim involves the same cause of action as set forth in the First Proof of Claim, must fail because the newer claim seeks costs of administration and damages from the rejection of an entirely separate lease. The provisions of the Leases themselves lead this court to conclude that they are distinct one from the other. Thus, they are not coterminous; rent is separately established for each; notice of termination of one lease does not terminate the other; and the leases are separately assignable or subject to subletting and need not necessarily be assigned or sublet to the same assignee or sublessee. Although the cross-default provisions rendered it unlikely that both leases would be assigned, or sublet, each to a different party, it clearly was contemplated that one lease might be terminated while the other continued. Not only do the leases not prohibit such action but Krasny, himself, claims to have told the trustee's counsel that despite the rejection of the Homewood Lease, which terminated that Lease, Gralome would file a damage claim for the Olean Lease only if the Olean Premises could not be sold or relet (Krasny Affidavit at ¶ 16). That the Homewood Lease references the Olean Lease and that the two leases contain cross-default provisions is simply insufficient for this court to conclude that the claims arising from the separate leases constitute a single cause of action. Nor does the fact that for a time the monthly rent reserved under the two leases was paid as a matter of convenience by a single check alter this court's conclusion.

■ In the alternative, Gralome argues that the First Proof of Claim constitutes an informal claim which is subject to later amendment by the filing of a formal proof of claim. Although informal proofs of claim may be subject to amendment subsequent to the bar date, *In re Lipman,* 65 F.2d 366 (2d Cir.1933); *In re Gibraltor Amusements, Ltd.,* 315 F.2d 210 (2d Cir. 1963); *In re Sems Music Company, Inc., supra,* 24 B.R. at 380 not every filing constitutes an informal claim subject to such an amendment. There must be some informal writing or some pleading in the bankruptcy case, *Miller, supra,* 45 F.2d at 116, which is a timely assertion by the creditor of his claim against the debtor's estate. *Avidon v. Halpert,* 145 F.2d 884 (2d Cir. 1944). And the timely written assertion or pleading must apprise the court of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim. *South Atlantic, supra,* at 819; *see also In re Sambo's Restaurants, Inc.,* 754 F.2d 811 (9th Cir.1985).

Here, if the trustee sufficiently studied the exhibits to the First Proof of Claim he might be able to infer from the cross-default provision in the Homewood Lease (only portions of which lease were annexed) that there might perhaps be a claim which could be asserted under the Olean Lease if that Lease contained a cross-default provision similar to the one in the Homewood Lease, but he certainly could not be assured that such a claim even existed, let alone be apprised that it would be asserted by Gralome against the estate.

■ Neither do the correspondence and telephone conversation with the trustee's counsel constitute an informal claim, even when reviewed together with the First Proof of Claim. The "correspondence" proffered by Gralome consists of inquiries about why the bankruptcy estate trustee issued checks in particular amounts to the lenders in connection with the Olean Lease; it contains no demand for payment of other amounts nor does it apprise the trustee of the nature, existence or amount of any claim which might exist under the Olean Lease. *See In re W.T. Grant Company,* 37 B.R. 593 (Bankr.S.D.N.Y.1984) (where Judge Galgay concluded that even if correspondence were to be considered an infor-

mal claim as to the landlord's right to use and occupation, the subject mentioned in that correspondence, that the correspondence was unrelated to a damage claim arising from rejection and could not constitute an informal claim therefor because it did not contain a demand against the estate or evidence an intention to hold the estate liable for damages).

 Knowledge by the debtor of the creditor's claim, standing alone, will not be a sufficient basis upon which to allow the filing of an amended claim. *South Atlantic Financial Corp. supra,* at 819; *In re International Horizons, Inc.,* 751 F.2d 1213, 1217 (11th Cir.1985); *Wilkens v. Simon Brothers, Inc.,* 731 F.2d 462, 465 (7th Cir.1984). Thus, courts have not allowed a creditor to file an amended proof of claim where the creditor had done nothing more than telephone the trustee and apprise him of the claim. *Pigott, supra* 684 F.2d at 244 *see South Atlantic Financial Corp., supra,* at 820. Accordingly, Mr. Krasny's conversation with the trustee's counsel cannot form the predicate for a finding that a claim was informally asserted. Moreover, as a factual matter, Mr. Krasny, by his own account, stated that if particular events did not occur he would file a proof of claim; knowledge that Gralome might assert a claim is not, in any event, knowledge that a claim was, indeed, being asserted.

The facts at bar are clearly distinguishable from two recent Ninth Circuit Court of Appeals decisions where amendments to informal claims were permitted. In *Sambo's Restaurant, supra* 754 F.2d 811, the "informal claim" consisted of the creditor's wrongful death complaint filed in district court, correspondence with debtor's counsel, and a joint motion by the creditor and debtor to transfer the case to the bankruptcy court. And in *In re Pizza of Hawaii,* 761 F.2d 1374, 13 B.C.D. 338 (9th Cir.1985), the "informal claim" consisted of a complaint for relief from the automatic stay which stated the creditor's desire to join the debtor as a defendant in a pending civil case as well as exhibits to that complaint

which detailed the nature and contingent amount of the creditor's claim. In both decisions the court found the documents stated "explicit demand(s) showing the nature and amount of the claim(s) against the estate and evidence(d) an intent to hold the debtor(s) liable." *In re Pizza of Hawaii,* 761 F.2d 1374, 13 B.C.D. at 345; *In re Sambo's Restaurant,* 754 F.2d at 816.

Amendments after the bar date are to be scrutinized very closely to insure that the amendment is in fact genuine and not an entirely new claim. *In re Credit Industrial Corp.,* 250 F.Supp. 582, 595 (S.D.N.Y.1966), mod. on other grounds, 366 F.2d 402 (2d Cir.1966); *W.T. Grant Company, supra,* 37 B.R. at 594; *In re J–M Corp.,* 23 B.R. 952, 954 (Bankr.W.D.Mich. 1982). That scrutiny in this case has led the court to conclude that the amendment asserts an entirely new claim and must be disallowed as untimely.

SETTLE ORDER.