**In re Richard C. ELLINGTON, Debtor.**

**Bankruptcy No. 88–30335–LMC.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Jan. 29, 1993.

E.P. Bud Kirk, El Paso, TX, for creditor Sunwest Bank.

Andres Villareal and Charles M. Cobbe, Jackson & Walker, Dallas, TX, for FDIC, as successor in interest to NCNB Texas Nat. Bank and NationsBank of Texas, N.A.

Lane C. Reedman, Guevara, Rebe, Bauman, Coldwell & Garay, El Paso, TX, for creditor Valerie Holguin.

Randall L. Rouse, Shafer, Davis, McCollum, Ashley, O'Leary & Stokes, Odessa, TX, for trustee Harvey Caughey.

## DECISION AND ORDER DENYING MOTION OF NCNB TEXAS NATIONAL BANK AND NATIONSBANK OF TEXAS, N.A. TO ALLOW OR RECONSIDER CLAIM

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Motion of NCNB TEXAS NATIONAL BANK ("NCNB") AND NATIONSBANK OF TEXAS, N.A. ("NATIONSBANK")[1] TO ALLOW OR RECONSIDER CLAIM. Upon consideration thereof, it is the ruling of the court that the Motion should be denied.

1. On January 1, 1992, NCNB officially changed its name to NationsBank of Texas, N.A.

2. The indebtedness was secured by assets of the various corporations, most of which have now

## INTRODUCTION

Federal Rule of Bankruptcy Procedure 3001(e) details the procedures creditors must undertake to transfer claims against a bankruptcy estate. Rule 3001(e) was drafted to satisfy certain needs in the administration of a bankruptcy estate. Adherence to the Rule is not optional, and, as the case at bar painfully demonstrates, failure to follow the Rule can be a costly omission.

## BACKGROUND FACTS

Richard C. Ellington (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on May 2, 1988 (the "Petition Date"). Upon the filing of the bankruptcy case, Kenneth D. Holt was appointed as the Chapter 7 Trustee. In March 1990, Harvey Caughey was named as substitute Chapter 7 Trustee of the bankruptcy estate (Mr. Holt died). For purposes of this decision, Mr. Holt and Mr. Caughey will be referred to, interchangeably, as the "Trustee."

As of the Petition Date, the Debtor was indebted to First RepublicBank of El Paso ("First Republic") and Sunwest Bank of El Paso, N.A. ("Sunwest") in the combined approximate amount of $2,500,000 by reason of the Debtor's guaranty of the indebtedness of D.E.B.C. Corporation, CVL, Inc., El Paso Terminal Warehouses, Inc. and Brown's Coldstorage and Distribution Center, Inc. ("Brown's Coldstorage").[2] The Debtor was a principal of these corporations, and each of the corporations had defaulted on loan obligations to First Republic and Sunwest.

Prior to its own insolvency, First Republic engaged in motion practice before this Court in the present case. On May 6, 1988, First Republic filed a Motion to Lift Stay (the "Lift Stay Motion") with this Court. The Lift Stay Motion was filed by Mr. Don Leslie, counsel of record for First Repub-

been foreclosed upon and sold, with the exception of certain assets of Brown's Coldstorage.

lic.[3]  On June 6, 1988, First Republic entered into a Joint Motion for Relief From Stay and Waiver of 30–Day Requirement with Sunwest (the "Joint Lift Stay Motion").  The Joint Lift Stay Motion was filed by Mr. Larry C. Wood, attorney of record for Sunwest, and Mr. Donald Leslie, attorney of record for First Republic.

Shortly thereafter, First Republic was declared insolvent and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver.  On July 29, 1988 the FDIC sold the assets of First Republic, including notes, liens, and claims in bankruptcy, to JRB Bank, N.A. in a purchase and assumption transaction.  JRB Bank, N.A., which was a bridge bank, then changed its name to NCNB Texas National Bank ("NCNB").

The bar date for the filing of proofs of claim in this case was September 8, 1988 (the "Bar Date").  On August 16, 1988, Mr. Leslie filed a proof of claim in the amount of $1,392,428.63 on behalf of First Republic (hereinafter referred to as the "First Republic Proof of Claim" or the "First Republic Claim").  Note, however, that at this time, NCNB, not First Republic, owned the claim against the Debtor's estate.  Note also that, because of the purchase and assumption transaction, NCNB was not a successor bank of First Republic.  *See* 12 U.S.C.  § 1821(n)(3)(A)(ii).  Despite this transfer of ownership of the claim, the procedures for transferring claims, as set forth in Rule 3001(e), were not followed.

On September 23, 1988, Mr. Leslie, who represented several other creditors in the case, filed a Notice of Appearance and Request for Documents, notifying all parties that he was the attorney of record for NCNB.  This document made no reference to First Republic and simply made it appear as if Mr. Leslie was retained by yet another creditor (NCNB).

Thereafter, NCNB replaced Mr. Leslie with Mr. Charles Cobbe, of the law firm of Jackson & Walker, as its counsel.  On December 1, 1988, Mr. Cobbe filed an Entry of Appearance and Request for Documents as counsel for NCNB (the "Entry of Appearance").  The Entry of Appearance made no mention that Mr. Cobbe was replacing Mr. Leslie as counsel of record or that Mr. Cobbe was representing NCNB with regard to its asserted ownership interest in the First Republic Claim.

On August 30, 1991, Mr. Cobbe filed an Amended Proof of Claim for NCNB to account for certain proceeds from sales of certain collateral security.  The Amended Proof of Claim described NCNB as a successor by merger to First Republic.  No objection was filed to the Amended Proof of Claim.

An objection was filed, however, by the Trustee (the "Trustee's Objection") to the First Republic Proof of Claim on September 5, 1991.  The Trustee's Objection was urged on grounds that the original claim did not contain sufficient documentation and that it required adjustment to reflect the sale of certain collateral.  The Trustee's Objection was served on Mr. Leslie, as counsel of record for First Republic, and not Mr. Cobbe, the then present counsel of record for NCNB.[4]  Mr. Leslie, who had by this time been relieved of his duties by NCNB for almost three years, did not respond, nor did he forward the Trustee's Objection to Mr. Cobbe.  On October 21, 1991, the Court entered an Order sustaining the Trustee's Objection and disallowed the First Republic Proof of Claim.  NCNB was, of course, not served with a copy of that Order.  After receiving an Interim Distribution Report from the Trustee in 1992 and determining that NCNB was not among the creditors listed to receive a distribution, Mr. Cobbe investigated the situa-

---

**3.** Mr. Nelson Smith, who is Mr. Leslie's law partner, also signed the Lift Stay Motion.

**4.** The Trustee has, in this case, objected to seventy-one claims.  The court cannot require the Trustee to independently scrutinize the ownership of every claim beyond the face of the proof of claim.  The Trustee already has numerous

duties imposed by the Bankruptcy Code and Rules, and the court is not inclined to obligate trustees with any more duties than those imposed by the Bankruptcy Code and Rules.  The Trustee did not make the mistake here by objecting to the First Republic claim; NCNB made the mistake of letting him.

tion and learned for the first time that the First Republic Claim had been disallowed. On July 22, 1992, NCNB filed the instant Motion to Allow or Reconsider Claim. Several objections to NCNB's motion were filed by Sunwest and by Valerie Holguin, another creditor.

## DISCUSSION

NCNB presents several arguments for why this court should allow the NCNB Claim or reconsider the disallowance of the First Republic Claim. NCNB first argues that it amended the First Republic Claim by its Amended Proof of Claim, filed on August 30, 1991, thereby curing all defects in the original. NCNB next argues that its claim should not have been disallowed because NCNB was never served with a copy of the Trustee's Objection to the First Republic Claim and Order Disallowing Claim. NCNB also contends that, under the doctrine of judicial estoppel, Sunwest is estopped from asserting that NCNB has no claim since NCNB has been an active participant throughout the pendency of the case. Finally, NCNB concludes that the motions NCNB has filed with the Court, along with the knowledge of the objecting parties of NCNB's claim, constitute informal proofs of claim.

### 1. NCNB Could not Amend the First Republic Proof of Claim

■ As previously discussed, Mr. Leslie filed a proof of claim on behalf of First Republic Bank on August 16, 1988. NCNB subsequently filed an Amended Proof of Claim on August 30, 1991, ostensibly to amend the First Republic Proof of Claim. This amendment, NCNB argues, cures any defect in the First Republic Proof of Claim, including the incorrect name of the owner of the claim.

■ Rule 3002 sets forth the required procedures for filing a proof of claim in a bankruptcy case. Courts construing that rule have traditionally allowed the filing of amended proofs of claim after the time to file a proof of claim has elapsed. *See, e.g., In re Sullivan*, 36 B.R. 771, 773 (Bankr. E.D.N.Y.1984). Leave to amend a proof of claim is within the court's discretion, and courts generally grant the requested leave freely. *See In re Norris Grain Co.*, 131 B.R. 747, 749–50 (M.D.Fla.1990).

■ A timely filed proof of claim may be freely amended "if it (1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim." *See In re McLean Industries, Inc.* 121 B.R. 704, 708 (Bankr.S.D.N.Y. 1990); *see also In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985). Furthermore, if the amendment does not seek recovery on any new or different claim, it will be allowed absent any overriding equitable concern. *McLean*, 121 B.R. at 708.[5]

■ In addition to the *timely* filing of a proof of claim, it is also essential to the allowance of an amendment that the original proof of claim be *properly* filed by the party seeking amendment. The proper filing of an original proof of claim is fatally absent in NCNB's argument. NCNB sought to amend the First Republic Proof of Claim, timely filed on August 16, 1988.[6] Here, when First Republic filed its original proof of claim, it did not *own* any claims against the Debtor's bankruptcy estate. All First Republic assets had been sold to NCNB, formerly JRB, by the FDIC on July 29, 1988, more than two weeks before Mr. Leslie filed the First Republic Proof of Claim. On that date, First Republic *no longer even existed.*

Section 501(a) of the Bankruptcy Code provides that "[a] creditor or an indenture trustee may file a proof of claim." 11 U.S.C. § 501(a). This section is an exhaus-

---

**5.** The cases cited by NCNB regarding the liberality of courts in allowing parties to amend their proofs of claim address only those situations where the *original party* which filed the proof of claim sought to amend, not an entirely new entity, as here.

**6.** *Timely* filed does not mean *properly* filed.

tive list of those parties which may file a proof of claim.[7] *See In re Allegheny International, Inc.*, 94 B.R. 877, 879 (Bankr. W.D.Pa.1988). The Bankruptcy Code defines a "creditor" as any entity that has a claim against the estate. *See* 11 U.S.C. § 101(10).

■ There is a dearth of case law on whether an entity which has sold its claim is a "creditor" permitted to file a proof of claim. This is not surprising, because logic dictates that if one does not own a claim against the debtor, one may not file a claim against the debtor. The defunct First Republic was not a "creditor" of the Debtor on August 16, 1988, and therefore the First Republic Proof of Claim was not "properly filed," as First Republic could not legitimately even *sign* a proof of claim representing that it owned a claim against the estate (for it did not).[8]

Absent a claim properly filed *by NCNB* (the owner of the claim), NCNB had no proof of claim to amend. *See Matter of Paul R. Dean Co., Inc.*, 460 F.Supp. 447, 456 (W.D.N.Y.1978). "[A]n absolute prerequisite to allowance of an amendment is the existence of something filed in the bankruptcy court *capable of being amended*." *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985) (emphasis added); *see also In re South Atlantic Financial Corp.*, 767 F.2d 814, 819 (11th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986) (before court can permit amendment, something capable of amending must be filed).

■ Therefore, the court concludes that since the First Republic Proof of Claim was improperly filed, it follows, *a fortiori*, that the Amended Proof of Claim offered by NCNB was ineffective, as it had nothing to amend.[9]

### 2. NCNB was not Entitled to Notice of the Trustee's Objection to The First Republic Proof of Claim

■ NCNB further complains that its counsel, Mr. Cobbe, was never served with a copy of the Trustee's Objection to the First Republic Proof of Claim. However, NCNB was not entitled to notice of the Trustee's Objection to the First Republic Proof of Claim. NCNB should have taken action, pursuant to Rule 3001(e), to ensure that it did receive notice of the Trustee's Objection, but its counsel did not follow the established bankruptcy procedures to protect its rights to notice.

The Proof of Claim filed on August 16, 1988 listed First Republic as creditor and Mr. Leslie as the creditor's counsel of record. When an objection to a claim is filed, the Federal Rules of Bankruptcy Procedure require that "[a] copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the *claimant*, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." FED.R.BANKR.PROC. 3007 (emphasis added). In accordance with Rule 3007, the Trustee duly served the listed claimant, First Republic, by delivering Trustee's Objection to counsel of record for First Republic, Mr. Leslie.

Despite the Trustee's adherence to Rule 3007, several problems beyond the control of the Trustee persisted: (i) First Republic no longer existed; (ii) even if First Republic did exist, it did not own the claim; (iii) Mr. Leslie was no longer counsel for either First Republic or NCNB. As a result, counsel for NCNB was without knowledge that the First Republic Proof of Claim was being challenged. The Trustee had no reason apparent from the face of the document to be aware of these problems. With no opposition to the Trustee's Objection, the First Republic Proof of Claim was ac-

---

7. Rule 3002 further provides that an unsecured creditor "must file a proof of claim or interest in accordance with this rule for the claim ... to be allowed." FED.R.BANKR.PROC. 3002(a).

8. Neither could its agent, Mr. Leslie.

9. Of course, had NCNB properly obtained a transfer of First Republic's claim, it could have then, conceivably, amended that claim. The problem here is that Party A cannot purport to amend Party B's claim. And if Party B does not even *have* a claim, then Party A certainly cannot purport to "amend" it.

cordingly disallowed by Order of this Court on October 21, 1991.

■ Transfers of claims between creditors are certainly no stranger to bankruptcy estate administration. Rule 3001 provides for precisely such a transfer. Rule 3001(e)(1) requires that where the transfer of a claim in bankruptcy occurs prior to the filing of the claim, as in the case at bar, only the *transferee*, NCNB in this case, may file the claim.[10] Rule 3001(e)(1) further requires that where the transfer occurs after the petition date but before the claim is filed, the proof of claim must be supported by "(A) a statement of the transferor acknowledging the transfer and stating the consideration therefore or (B) a statement of the transferee setting forth the consideration for the transfer and why the transferee is unable to obtain the statement from the transferor."[11] NCNB did not file a statement of transfer of claim pursuant to this bankruptcy rule. "The use of the word "shall" in Rule 3001(e)(2) indicates that Congress considered the filing of such notice to be mandatory." *In re Wilson,* 96 B.R. 257, 261 (9th Cir. BAP 1988).

Rule 3001(e) was drafted with the orderly administration of bankruptcy claims in mind. The Advisory Committee Note to Rule 3001(e) states in relevant part:

> The interests of sound administration are served by requiring the post-petition transferee to file with the proof of claim a statement of the transferor acknowledging the transfer and the consideration for the transfer. Such a disclosure will assist the court in dealing with the evils

that arise out of post-bankruptcy claims against the estate.

*See* ADVISORY COMMITTEE NOTE TO BANKRUPTCY RULE 3001(e) (citations omitted).

■ The statement of transfer of claim provided under Rule 3001(e) serves "the interests of sound administration." The content of a proof of claim filed under Rule 3001(e)(1) puts the trustee on notice that the original holder of claim against the estate is no longer an interested party with respect to that claim.[12] A proof of claim filed under Rule 3001(e) is filed in the name of the claim's *transferee*. A proper filing entitles the transferee-claimant to all notice of actions affecting its claim. *See e.g.,* FED.R.BANKR.PROC. 3007 (claims objections). When a party fails to file a statement of transfer of claim, that party proceeds at its own risk that the wrong party will receive notice of claims objections.[13] For some inexplicable reason, NCNB took that risk, and suffered a loss as a result.

### 3. Sunwest is not Estopped From Denying NCNB's Claim

■ NCNB argues that Sunwest is judicially estopped from asserting the invalidity of NCNB's claim since NCNB has been actively involved in the case and several orders signed by the court evidence the claim of NCNB. The argument is not persuasive.[14]

■ The Fifth Circuit recognizes the doctrine of judicial estoppel. *See Joleewu, Ltd. v. City of Austin,* 916 F.2d 250, 252 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).[15]

**10.** The claim is, therefore, filed in the name of the *transferee,* not the transferor.

**11.** Here, the transfer occurred after the Petition Date, but before the filing of the claim by First Republic Claim.

**12.** A Debtor is required to file a schedule of its assets and liabilities with its chapter 7 petition. FED.R.BANKR.PROC. 1007(b)(1). The Debtor must also file a list containing the name and address of each creditor. FED.R.BANKR.PROC. 1007(a)(1).

**13.** The requirement of a statement of transfer of claim be obtained from the transferor also protects the transferor by ensuring that only the true owner of the claim receives a distribution

from the estate. *See In re Hoffman,* 98 B.R. 783, 784 (Bankr.S.D.Ohio 1989).

**14.** The court is similarly unpersuaded by NCNB's attempts to invoke the doctrine of issue preclusion. Under that doctrine, a party may not relitigate an issue that has been previously raised, litigated and adjudicated. *See Walker v. American Motorists Ins. Co.,* 529 F.2d 1163, 1165 (5th Cir.1976). The issue of whether NCNB validly filed a proof of claim has never been so disposed.

**15.** Although judicial estoppel is an equitable doctrine, it is different from equitable estoppel. A finding of judicial estoppel does not require

The doctrine "arises from the positive rules of procedure based on justice and sound public policy." *See Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956). Essentially, a party "is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made." *See id.,* 291 S.W.2d at 295 (citing, 31 C.J.S., Estoppel, § 121, p. 390).

The employ of judicial estoppel protects not only the litigants, but also the courts. *Compare Matter of Cassidy,* 892 F.2d 637, 641 (7th Cir.1990) (courts protected) *with Colonial Refrigerated Transportation, Inc. v. Mitchell,* 403 F.2d 541, 550 (5th Cir.1968) (litigants protected). By estopping a party from asserting a position contrary to a position taken earlier, the doctrine protects susceptible litigants from being misled by a later change in position.[16] *See Colonial Refrigerated Transportation,* 403 F.2d at 550. Furthermore, the doctrine guards against the perversion of the judicial process where " 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice.' " *See Cassidy,* 892 F.2d at 641 (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3rd Cir.1953). Judicial estoppel prevents litigants from " 'playing fast and loose with the courts.' " *Id.*

Courts have never reduced the doctrine of judicial estoppel to a clearly defined principle. *See Cassidy,* 892 F.2d at 641. Courts have been cautious in this regard to prevent unscrupulous persons from using the strictures of the doctrine to subvert the rule. *Id.* However, that being noted, judicial estoppel is not without its recognized limitations.

■ Courts have traditionally applied the doctrine with caution. *See, e.g., Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir.1982). Judicial estoppel is usually only applied where clearly inconsistent positions are taken. *See Cassidy,* 892 F.2d at 637.

It is usually invoked where a party convinced the court to accept a position. *Id.; Allen,* 667 F.2d at 1167. Judicial estoppel will not be applied where the party seeking to change its position was unaware of a recent change in case law, *see Brandon v. Interfirst Corporation,* 858 F.2d 266, 269 (5th Cir.1988), or where the party had no "knowledge of facts which should have led them to take a different position." *See Walker v. American Motorists Insurance Co.,* 529 F.2d 1163, 1164–65 (5th Cir.1976).

In the case at bar, NCNB consistently acted as if it had validly asserted its claim against the estate. Certainly it held itself out as doing just that. It was not the responsibility of Sunwest to make sure that NCNB had properly adhered to the requirements of the Bankruptcy Code and Rules by filing its claim, however. That responsibility fell squarely upon the shoulders of NCNB.

■ Clearly, both the court and Sunwest treated NCNB as a *creditor* in this case. That point is undisputed. NCNB correctly points out several orders of the court reflecting that fact. However, the court never found, nor did Sunwest ever advance the position, that NCNB had validly *filed* a claim. That question of fact was only readily apparent to NCNB, Sunwest and the court, recently. Certainly throughout these proceedings NCNB acted as if it were entitled to a distribution from the estate, but merely acting as if entitled to a distribution does not make it so. Only those *creditors* who *validly file* a proof of claim are entitled to a distribution. *See In re Graziano,* 35 B.R. 589, 592 (Bankr. E.D.N.Y.1983); *In re Rhoades,* 34 B.R. 168, 169 (Bankr.D.Vt.1983).

Sunwest operated as though NCNB had a valid claim for the four years that this case has been before this court because Sunwest believed that NCNB had timely filed a claim. NCNB certainly acted that way. However, Sunwest was mistaken; NCNB had not properly filed its claim.

reliance and injury, as does equitable estoppel. *Id.* at 252 n. 3.

16. Judicial estoppel applies to changes in position on both legal and factual matters. *See Matter of Cassidy,* 892 F.2d 637, 641–42 (7th Cir.1990).

"Because the [doctrine of judicial estoppel] looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where [a party's] assertions were based on fraud, inadvertency or mistake." *See Continental Casualty Company v. McAllen Independent School District*, 850 F.2d 1044, 1046 (5th Cir.1988) (citing *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir.1973)). After the validity of NCNB's claim came into question, Sunwest ceased cooperative efforts with NCNB and has not filed any pleading which might subject it to the preclusive effects of judicial estoppel.

The court finds, therefore, that Sunwest is not estopped by its prior pleadings to assert that NCNB has not validly asserted its claim against the bankruptcy estate. Sunwest did not lull NCNB into securely believing that NCNB had validly filed a claim. If any party was misled, it certainly was Sunwest. Sunwest acted appropriately in objecting to NCNB's claim when the fact that NCNB had not filed its claim properly surfaced.

### 4. NCNB did not File a Valid Informal Proof of Claim

▮ NCNB further argues that the motions it has filed before this Court constitute an informal proof of claim. The court finds that argument similarly unpersuasive.

▮ In order for an informal proof of claim to be valid, there must be some informal writing or pleading filed in the bankruptcy court which could be treated as a timely assertion of the claim. *See Matter of Thompson McKinnon, Inc.*, 130 B.R. 721, 723 (Bankr.S.D.N.Y.1991) (citing *Vertientes, Ltd. v. Interior Trade, Inc. (In re Vertientes, Ltd.)*, 845 F.2d 57, 60 (3rd Cir. 1988); *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.)*, 767 F.2d 814, 819 (11th Cir.1985)). An informal proof of claim must "be in the form of a pleading filed in the Bankruptcy Court which shows that a demand is made against the estate and the creditors' intention to hold the estate liable." *See In re*

*Ungar*, 70 B.R. 519, 521–23 (Bankr.E.D.Pa. 1987).

▮ While it is true that NCNB did file many pleadings which would constitute a valid informal proof of claim, those pleadings were all filed well after the Bar Date. An informal proof of claim may be asserted, if at all, only when it has been filed prior to the bar date. *See In re Intern. Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985). Therefore, to the extent that NCNB seeks request of those claims filed post-Bar Date as informal proofs of claim, that request is unsupportable.

▮ NCNB further asserts that, by virtue of its purchase of the First Republic assets, it was a party to the Lift Stay Motion, filed by First Republic on May 6, 1988, and the Joint Lift Stay Motion, filed by Sunwest and First Republic on June 6, 1988, prior to the Bar Date.

Both of these motions indeed contained all the required information to constitute an informal proof of claim. *See In re Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir.1985) (lift stay motion can serve as informal proof of claim); *In re McCoy Management Services, Inc*, 44 B.R. 215, 218 (Bankr.W.D.Ky.1984). The information contained therein includes an identification of the creditor, First Republic, the nature of the claim, an account of the indebtedness and a demand for authorization to foreclose on property of the estate in effort to reduce the indebtedness. However, the fact still remains that the pleading was filed in the name of *First Republic*, not NCNB.

▮ The filing of NCNB's amended proof of claim did not cure this defect. An absolute prerequisite to an allowance of an amendment to an informal claim is the existence of something filed in the bankruptcy court capable of being amended. *See In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr. E.D.N.Y.1985); *see also, In re Square Shooter, Inc.*, 130 B.R. 108, 109 (Bankr. S.D.Ala.1991).

The "absolute prerequisite" of NCNB's ability to "amend" the informal proof of claim of First Republic (if, indeed, the lift

stay motions qualify as such) would have been NCNB's compliance with Rule 3001(e)(2). That rule provides:

> If a claim other than one placed on a bond or debenture has been unconditionally transferred after the proof of claim has been filed, *evidence of the terms of the transfer shall be filed by the transferee.* The clerk shall immediately notify the original claimant by mail of the filing of the evidence of the transfer and that objection thereto, if any, must be filed with the clerk within 20 days of the mailing of the notice or within any additional time allowed by the court. If the court finds, after a hearing on notice, that the claim has been unconditionally transferred, *it shall enter an order substituting the transferee for the original claimant,* otherwise the court shall enter such order as may be appropriate.

FED.R.BANKR.PROC. 3001(e)(2) (emphasis added).

■ Rule 3001(e)(2) is more than a simple housekeeping rule. It ensures that only true creditors are asserting claims against bankruptcy estates. More importantly for the purposes of this case, Rule 3001(e)(2) (as in force at the applicable period of time here under discussion) required a court to enter an order *substituting the transferee for the original claimant.* Following the entry of such an order of substitution, the transferee would become the party to be noticed with regard to all actions affecting its claim. While it is generally held that an amendment to a proof of claim can cure many defects in the original proof of claim, failure to file notice of transfer of claim is not a defect which can be cured. To hold otherwise would contradict the established principle of statutory construction which provides that strict construction is required where a statute is narrowly drawn to exclude matters which, if included, would defeat its purpose. *See* Singer, SUTHERLAND STATUTORY CONSTRUC-

TION § 58.06 (5th ed., Temporary Pamphlet 1992). Permitting the amendment of a claim never owned in the first place would circumvent the express requirements for documenting and asserting a transferred claim as set out in Rule 3001(e).[17]

The court therefore holds that NCNB did not file a valid informal proof of claim, nor could it amend the informal proof of claim of First Republic.

### 5. Knowledge of NCNB's Claim does not constitute a Proof of Claim

■ For the purposes of completeness and to the extent raised by NCNB, the court finds that knowledge alone on the part of any party of NCNB's claim, without a proper filing by NCNB, does not constitute an informal proof of claim. Knowledge of a claim has never been held sufficient to constitute either a formal or an informal proof of claim. *See In re Murchison,* 85 B.R. 37, 41 (Bankr.N.D.Tex.1987); *see, e.g., In re Stern,* 70 B.R. 472, 476 (Bankr.E.D.Pa.1987); *In re W.T. Grant Co.,* 53 B.R. 417, 421 (Bankr.S.D.N.Y.1985). Furthermore, the fact that NCNB had a claim against the pre-petition debtor and that the existence of that obligation is known is not sufficient to establish a claim against the estate which may later be amended. The claimant must take affirmative, definitive steps to assert that claim against the estate. *See, In re Mitchell,* 82 B.R. 583, 586 (Bankr.W.D.Okla.1988); *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. 789, 796–97 (E.D.Va.1985). By failure to satisfy the requirements of Rule 3001(e), NCNB did not take the necessary definitive steps to demonstrate that it planned to hold the estate liable for the First Republic Claim.

### 6. Allowance of NCNB's Claim Would Prejudice Creditors

■ The court is also disinclined to allow the NCNB Claim because of the hard-

---

**17.** Further note that an Order is generally only available by Motion. *See* FED.R.BANKR.PROC. 9013. The rule in place as of the applicable period here in question required the entry of an Order to accomplish the transfer of a claim. *See* FED.R.BANKR.P. 3001(e); BANKR.L.R.PROC. 3001. The Trustee in a chapter 7 case would

then be served with a Motion to Transfer Claim. *See* BANKR.L.R.PROC. 9013(g)(1). Had NCNB followed the procedure set forth in the rule before filing its Amended Proof of Claim on August 30, 1991, the Trustee would have been served before the Trustee filed the Trustee's Objection on September 5, 1991.

ship and prejudice allowance of the claim would work on other creditors in this case. *See In re Stavriotis*, 103 B.R. 1005, 1007 (Bankr.N.D.Ill.1989), *aff'd*, 129 B.R. 527 (N.D.Ill.1991) (improperly asserted amended claims not allowed where impact on creditors would be dramatic). NCNB, by virtue of its association with First Republic, had sufficient, reasonable and timely notice of the Bar Date. Furthermore, at all times, First Republic and NCNB were represented by competent counsel who are clearly not ignorant of the requirements of Rule 3001(e). NCNB's failure to file a timely proof of claim or a notice of transfer of claim was not beyond its control. Despite NCNB's active participation in this case, NCNB failed to make the most basic effort to protect its claim.

As previously mentioned, the Trustee originally objected to seventy-one claims in this case. Many of those creditors had to retain counsel, appear in court and prove their claims. By these actions, these creditors incurred substantial costs, most notably in attorneys fees. It would be inherently inequitable to now allow the claim of NCNB where others survived the costly claims objection process.

Finally, several creditors, in their negotiations with the Trustee, have reduced the amount of their claim, at least in part, in light of the projected distribution from the estate. The projected distribution which the parties used as a basis for their negotiations did not include the NCNB claim. Most notably, Sunwest has reduced its claim in the approximate amount of $100,-000.00 and Valerie Holguin, a general unsecured creditor, has reduced her claim in the approximate amount of $20,000.00. To now permit NCNB to assert its claim would lower the distributions to these creditors. *See Stavriotis*, 103 B.R. at 1007 (late claim not allowed where creditors have no notice of claim and have relied on its absence). Substantial hardship and prejudice would result to creditors by allowing the NCNB claim at this late date.

### 7. If NCNB Could File a Claim, It Need Not Proceed Against Its Security First

Sunwest and the Trustee also objected to NCNB's Motion for Allowance or Reconsideration on the grounds that NCNB may not assert a deficiency claim before proceeding against its security. Certain of the equipment from Brown's Coldstorage Warehouse have not yet been foreclosed upon and sold.

The loan documents executed by the Debtor and First Republic waive the obligation of the lender to liquidate the collateral before proceeding against the guarantor, *i.e.*, the Debtor. The Texas Supreme Court held, in *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706 (Tex.1990), that, where the guaranty documents so provide, a lender need not liquidate its collateral before seeking judgment against the guarantor. *See Coleman* 795 S.W.2d at 710; *see also Clay v. Federal Deposit Ins. Corp.*, 934 F.2d 69, 72 (5th Cir.1991).

The Trustee contends that *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex.1982) controls. However, *Tanenbaum* stands for the proposition that if a lender takes possession of its collateral and fails to notify the Debtor of its intention to sell or not, as required by § 9.504 of the Texas Business and Commerce Code, the lender is deemed to have retained the collateral in satisfaction of its claim and no deficiency claim can be asserted. *Id.* at 772. In the case at bar, NCNB never took possession of the collateral, so *Tanenbaum* does not apply. *See Clay*, 934 F.2d at 72 (creditor not in possession of collateral owes no duty of diligence to guarantor). The court finds, therefore, that if NCNB were permitted to assert a claim, it could assert a claim in the absence of liquidating its collateral.[18]

### CONCLUSION

For the reasons stated herein, the Court finds that the instant motion by NCNB is not well taken and the relief requested is hereby denied. Accordingly, the Notice of

---

**18.** In fact, throughout this case, NCNB has always asserted that its claim is unsecured, except to the extent of the value of the collateral from Brown's Coldstorage.

Transfer of Claim filed by NCNB, purporting to transfer the First Republic Claim from NCNB to the Federal Deposit Insurance Corporation, is hereby also denied since NCNB has no allowed claim in this case to transfer.

SO ORDERED.