In re Harry S. PHILLIPS, Debtor.

Bettye C. PHILLIPS, Plaintiff,

v.

Harry S. PHILLIPS, Defendant.

Bankruptcy No. 89–60099.
Adv. No. 94–6017.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Sept. 8, 1994.

Charles E. Lauffer, Jr., Hardy & Atherton, Tyler, TX, for plaintiff Bettye C. Phillips.

Dale Long, Tyler, TX, for debtor/defendant Harry S. Phillips.

## AMENDED MEMORANDUM OPINION

C. HOUSTON ABEL, Chief Judge.

Before the Court is a complaint filed by Bettye Phillips to obtain declaratory relief regarding potential claims Bettye Phillips may have against the Debtor. The Court consolidated the complaint for trial with an adversary proceeding filed by the Debtor against Bettye Phillips (Adversary No. 94–6020). At the conclusion of the trial, the Court rendered its findings and conclusions in Adversary No. 94–6020[1] and took under advisement Adversary No. 94–6017. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) & (O).

### BACKGROUND

For an understanding of this dispute, a "brief" recitation is in order. In April 1976, as part of a divorce settlement between the Debtor and his first wife, Martha Jean Phillips, a limited partnership by the name of Phillips & Phillips, Ltd. was formed to invest and manage approximately $18 million dol-

1. The Court entered a final order in this adver-   sary proceeding on May 12, 1994.

lars of their community assets. Shortly after its formation, Phillips & Phillips, Ltd. acquired approximately 432 acres of land formerly known as "Ingram's Farm". To develop the 432 acres into an upscale residential community with a country club, Hollytree, Ltd. was formed. Phillips & Phillips, Ltd. sold the 432 acres to Hollytree, Ltd. in November 1981 for $1.8 million in cash and received a promissory note for $1.2 million. Contemporaneously, Phillips & Phillips, Ltd. paid Hollytree, Ltd. $1.2 million in cash in exchange for a 29% interest in Hollytree, Ltd. Essentially, the transaction netted out the $1.2 million dollar promissory note.

About one year prior to the property being sold to Hollytree, Ltd., the Debtor on August 9, 1980, married his second wife, Bettye Phillips. Early in his marriage with Bettye Phillips, the Debtor's relationship with his first wife deteriorated into open hostility. On November 28, 1983, Martha Jean Phillips sued the Debtor for the dissolution of Phillips & Phillips, Ltd. The lawsuit resulted in a $300,000.00 judgment against the Debtor. During the pendency of the Debtor's appeal of the state court judgment, the Debtor filed a voluntary petition under Chapter 11.[2] Shortly after filing for personal bankruptcy, the Debtor filed a voluntary petition under Chapter 11 on behalf of Phillips & Phillips, Ltd.[3]

Although the Debtor undoubtedly hoped that the Bankruptcy Code would provide him immediate relief from his legal battles, the opposite soon occurred. In 1990, the Tyler Court of Appeals reversed the trial court's calculation of damages and increased the judgment to $535,302.14, plus interest.[4] The larger judgment was affirmed by the Texas Supreme Court in 1991.[5] During 1991, the Debtor filed a petition for divorce from Bettye Phillips. Bettye Phillips filed her coun-

terclaim for divorce on June 2, 1992. In July 1992, Martha Jean Phillips was successful in having the Fifth Circuit reverse this Court's orders confirming the Debtor's and Phillips & Phillips, Ltd.'s plans of reorganization on technical grounds.[6]

After the filing of the divorce papers, Bettye Phillips became active in the bankruptcy proceedings. In an attempt to protect the interests of Bettye Phillips during the bankruptcy, Bettye Phillips' divorce attorney filed a Request for Notice of all filings on January 6, 1992. That request was followed by a written request by Bettye Phillips on February 12, 1992, that she personally be added to the mailing matrix. On April 1, 1992, Bettye Phillips filed a Motion for Clarification of Relief Related to Community Assets ("Motion for Clarification") to determine her rights to assets subject to the Debtor's and Phillips & Phillips, Ltd.'s plans of reorganization. In the Motion for Clarification, Bettye Phillips asserted the following claims against the Debtor: claim for unequal division of community property; reimbursement due the community estate and Bettye Phillips' separate property estate from the Debtor's separate property estate; claims due Bettye Phillips' separate property estate from the community estate; and claim for the Debtor's breach of fiduciary duties. The Court entered an order denying the Motion for Clarification without prejudice on June 23, 1992. On September 25, 1992, Bettye Phillips filed a Motion for Relief from Automatic Stay to permit the divorce proceeding to continue. The Court entered an order on October 6, 1992, lifting the automatic stay "for the limited purpose of allowing the state court to dissolve the marriage of Harry S. Phillips and Bettye C. Phillips, and to allow the state court to resolve the property rights as between Harry S. Phillips and Bettye C.

---

**2.** Filed on January 17, 1989.

**3.** Filed on February 2, 1989. The two bankruptcies were administratively consolidated on February 16, 1989.

**4.** See *Phillips v. Phillips*, 792 S.W.2d 269 (Tex. App.—Tyler 1990).

**5.** See *Phillips v. Phillips*, 820 S.W.2d 785 (Tex. 1991).

**6.** Orders confirming the Chapter 11 plans of both bankruptcies were entered on November 13, 1989, over the strong objection of Martha Jean Phillips. In its opinion reversing this Court's orders, the Fifth Circuit held that the Debtor, as a bankrupt general partner of Phillips & Phillips, Ltd., did not have authority to place the partnership in bankruptcy. See *In re Phillips*, 966 F.2d 926 (5th Cir.1992).

Phillips." The order further provided that the "state court shall not be allowed to divide or affect any assets owned by Phillips and Phillips, Ltd., other than to determine the extent of the right, if any, of Bettye C. Phillips to Harry S. Phillips's [sic] interest in the Phillips & Phillips partnership."

With Martha Jean Phillips' consent, the Debtor filed a new plan of reorganization on behalf of Phillips & Phillips, Ltd. which consensually resolved their dispute. Accordingly, the Debtor and Phillips & Phillips, Ltd. each filed a second plan of reorganization and disclosure statement on April 8, 1993. Pursuant to the plan for Phillips & Phillips, Ltd., the partnership was to be liquidated with remaining assets distributed ½ to Martha Jean Phillips and ½ to the Debtor after satisfaction of claims held by creditors. As for the Debtor's plan, four Classes were created. Class one consisted of holders of administrative claims. Class two consisted of the claim of Martha Jean Phillips. Under the terms of the plan, the Debtor was to apply eighty percent of the actual cash received by him in the distribution from Phillips & Phillips, Ltd. bankruptcy towards the state court judgment obtained by Martha Jean Phillips against the Debtor, less a reserve for income taxes and payments to Class 1 and Class 3. A promissory note for the balance of the judgment was to be executed with a maximum term of five years and a minimum term of three years. Class 3 consisted of all the claims of unsecured creditors other than Bettye Phillips. The plan provided that Class 3 claimants were to be paid in full within ninety days of the effective date of the plan. Class 4 consisted of the contested, contingent, and disputed claim of Bettye Phillips. The plan contemplated that after the filing of a formal proof of claim by Bettye Phillips, the Court would valuate any and all claims of Bettye Phillips other than her claim for undivided interest in community property. The plan further provided that if the State Court Decree in the dissolution of the marriage includes a judgment or claim against the Debtor or property of the Debtor, then such judgment or claim shall be equitably subordinated to the payment of all non-insider creditors. The judgment or claim shall be paid, according to the plan, commencing on the sixth anniversary date of the effective date of the plan in the form of three annual payments with interest at seven percent. Finally, the Debtor's plan set a bar date for the filing of all proofs of claim twenty days prior to the confirmation date; i.e., July 14, 1993. Despite the setting of the bar date, no formal proof of claim was filed by Bettye Phillips.

After the confirmation hearings,[7] the Court entered orders confirming both plans.[8] All eligible Classes voted for Phillips & Phillips, Ltd.'s plan while three of the four Classes voted for the Debtor's plan. The only Class to not vote for the Debtor's plan was Class 4—Bettye Phillips. No vote was filed by Bettye Phillips.

On September 7, 1993, Bettye Phillips filed a Motion for Reconsideration of the Order Confirming the Debtor's Chapter 11 Plan ("Motion for Reconsideration"). In the Motion, Bettye Phillips asserted that she received improper notice of the bar date, that her claims were never properly valued or objected to by the Debtor, that her claims can not be equitably subordinated, and that the treatment of her claims is "blatantly unfair". In the Court's Order Denying Motion for Reconsideration, entered on November 9, 1993, the Court found that sufficient notice was provided Bettye Phillips regarding what she was required to do to protect her claims against the Debtor. The Court held that because Bettye Phillips "never filed a proof of claim, no valuation hearing was necessary. There simply was no claim to valuate."[9] Finally, the Court stated that it would not reconsider the order confirming the Debtor's plan based on hindsight by Bettye Phillips that she may have "erred in not either filing a proof of claim or by not filing an objection

---

7. August 3, 1993.

8. The Order Confirming the Debtor's Second Plan of Reorganization was entered on August 31, 1993. The Order Confirming Phillips & Phillips, Ltd.'s Second Plan of Reorganization was entered on September 1, 1993.

9. *See In re King*, 165 B.R. 296, 299 (Bankr. M.D.Fla.1994) (proof of claim is a prerequisite to a court ruling on a motion to value").

to the Plan." No appeal was filed of this order.

Just when the Court thought that its involvement in this case was coming to a close, Bettye Phillips filed on March 7, 1994, the instant adversary proceeding. Bettye Phillips seeks a determination as to the status of her claims against the Debtor. Specifically, Bettye Phillips requests that the Court determine the effect the plan had on the following claims being asserted by Bettye Phillips in the divorce proceeding:

1. right to her ½ interest in the community property;

2. right of reimbursement for the use of community property to enhance the Debtor's separate property;

3. right of reimbursement for the Debtor's use of time, talent, labor and effort to the betterment of his separate property and to the detriment of the community property;

4. fraud in the exercise of physical control over community property;

5. breach of fiduciary duty in the management and control of community property;

6. assault, battery and intentional, knowing or reckless bodily injury; and

7. right to maintenance and support.

The Debtor answered by admitting that the resolution of property rights between the Debtor and Bettye Phillips were not barred by the plan and that support payments were not dischargeable. Thus, it is undisputed that number one and number seven are not affected by the Debtor's plan. The Debtor asserts, however, that claims "for monetary relief, whether for reimbursement of any community property funds or other debt, was subject to the claims bar date in the plan"; i.e., numbers two through six.

### ANALYSIS

A. *Did Bettye Phillips Have Prepetition Claims?*

■ Bettye Phillips argues that all her claims arose postpetition because she had no

right to assert the claims listed as numbers two through six absent a pending divorce.[10] It was the filing of the divorce, according to Bettye Phillips, that created her "right to payment". And since the divorce was filed after the Debtor filed bankruptcy, Bettye Phillips argues that numbers two through six are postpetition claims that are not affected by the Debtor's plan because no "right to payment" existed until the divorce was filed.

Bettye Phillips' interpretation on what constitutes a claim is too limited. Pursuant to 11 U.S.C. § 101(5), a claim is defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

The legislative history of the Bankruptcy Code demonstrates that Congress intended the term "claim" to be given broad interpretation so that "all legal obligations of the debtor, no matter how remote or contingent will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808; *see Pa. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). The Bankruptcy Code's definition of the term "claim" is much broader than the definition under the former Bankruptcy Act. *See In re Mooney Aircraft, Inc.*, 730 F.2d 367, 375 n. 6 (5th Cir.1984) (determined the meaning of the term "claim" under the Bankruptcy Act).[11]

---

**10.** No authority was cited which supports Bettye Phillips' assertion that *none* of her claims could be asserted against the Debtor absent a pending divorce. However, the veracity of this assertion is irrelevant to the outcome of the Court's decision.

**11.** In her brief, Bettye Phillips cites *Mooney* as authority that she did not have a claim prior to

Recently, the Fifth Circuit provided guidance as to how broad of a term "claim" is under the Bankruptcy Code. In *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994), Universal Manufacturing Corporation ("Universal"), through prior purchases and mergers, became the owner of certain assets relating to the production and sale of manufactured housing that were previously owned by a corporation in bankruptcy—Winston Industries, Inc. ("Winston"). On December 24, 1985, a mobile home that was built by Winston prior to the filing of bankruptcy [12] caught fire resulting in two deaths. Subsequently, a wrongful death product liability action was filed against Universal and United States Fidelity and Guaranty Company.[13] In granting Universal's motion for summary judgment, the district court held that Winston's plan discharged liability for the wrongful deaths. Thus, the cause of action was dismissed. On appeal, the Fifth Circuit was required to determine whether the term "claim" includes liabilities that accrue postpetition based on prepetition conduct of the debtor.

■ After analyzing the various theories used by other courts, the Fifth Circuit essentially adopted the prepetition relationship test used in *In re Piper Aircraft Corp.*, 162 B.R. 619 (Bankr.S.D.Fla.1994), *aff'd*, 168 B.R. 434 (S.D.Fla.1994), and in *In re National Gypsum Co.*, 139 B.R. 397 (N.D.Tex.1992). In both *Piper* and *National Gypsum*, the courts held that a claim may arise at the time of the prepetition wrongful conduct by the debtor if the claimant has some type of specific relationship with the debtor at that time. *See Piper*, 162 B.R. at 627 ("there must be some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant" in order for a future claimant to have a "claim" under the Bankruptcy Code);

*National Gypsum*, 139 B.R. at 409 ("prepetition conduct that can be fairly contemplated by the parties at the time of Debtor's bankruptcy are claims under the Code"). Because there was no evidence of some prepetition relationship between the debtor, the plaintiff, or the decedents, the Fifth Circuit held that there was no claim subject to the debtor's discharge. *Lemelle*, 18 F.3d at 1277. The Bankruptcy Code's definition of "claim" cannot be extended to include claimants who are unknown and unidentified at the time the bankruptcy is filed. *Id*.

In the instant case, it is undisputed that Bettye Phillips and the Debtor had an extensive prepetition relationship. Bettye Phillips was married to the Debtor for approximately eight and one-half years before the Debtor filed bankruptcy. Much, if not all, of the facts which allegedly gave rise to the claims being asserted by Bettye Phillips concern prepetition conduct of the Debtor. Specifically, the complaint refers to the misuse of community monies by the Debtor in 1986 to enhance his separate property.[14] Thus, both the Debtor's marriage to Bettye Phillips at the time bankruptcy was filed and the inclusion of her on the mailing matrix clearly overcomes the due process concerns regarding the notice of the bankruptcy that the Fifth Circuit was concerned about in *Lemelle*. Bettye Phillips was fully aware of the Debtor's bankruptcy and she had notice that any potential claim she had against the Debtor could be affected by the Debtor's plan of reorganization.

■ Bettye Phillips' assertion that no prepetition claim existed because she did not have a right to seek recovery for monetary damages against the Debtor until the divorce was filed is meritless. Although the determination of whether a claim exists is based on non-bankruptcy substantive law, *see In re*

the divorce action. However, since *Mooney* is an Act case, it is distinguishable because the Fifth Circuit was using a more narrow interpretation of the term "claim".

**12.** Winston filed a voluntary petition under Chapter 11 on September 9, 1982.

**13.** The mother of the decedents filed the cause of action.

**14.** According to the complaint, the Debtor received $1,789,000.00 on November 18, 1986, as a fee for services in the settlement of a lawsuit. The complaint states that the Debtor used the monies to enhance his separate property thereby creating a right of reimbursement.

*Remington Rand Corp.,* 836 F.2d 825, 830 (3d Cir.1988), such "is not dispositive of the time at which a claim arises under the Code." *National Gypsum,* 139 B.R. at 405. Prepetition claims include causes of action which are not ripe for suit outside of bankruptcy. *National Gypsum,* 139 B.R. at 405. The Bankruptcy Code recognizes such unripe causes of action by including all contingent, unliquidated, and unmatured rights within the definition of the term "claim". *See* 11 U.S.C. § 101(5). As long as all the elements that can give rise to liability have occurred prepetition, other than the right to proceed to adjudication, a claim exists. Therefore, all claims being asserted by Bettye Phillips which are based upon alleged prepetition conduct of the Debtor were subject to the claims bar date, regardless of the fact that the divorce was filed postpetition.

**B. *Is Bettye Phillips A Creditor Of The Debtor?***

■ Bettye Phillips asserts that she is not a "creditor" of the Debtor because she had no prepetition claim. According to Bettye Phillips, a "creditor" is an entity that has the right to seek judicial relief at the time bankruptcy is filed. This argument, however, is merely a further continuation of her first argument that she had no prepetition claim.

■ The term "creditor" is defined in 11 U.S.C. § 101(10) to mean:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

. . . . .

(C) entity that has a community claim.

Based on the Court's finding herein that Bettye Phillips did have prepetition claims, she is clearly a creditor of the Debtor. Bettye Phillips' contingent claims are analogous to that of a guarantor. A guarantor of a debtor's loan is a creditor even if the debtor is current on the loan at the time bankruptcy is filed. Although the guarantor's claim against the debtor is contingent on a potential postpetition satisfaction of the debtor's loan by the guarantor, the term "claim" in-

cludes contingent as well as fixed claims. 2 COLLIER ON BANKRUPTCY ¶ 101.10 (15th ed.). Bettye Phillips is a creditor by virtue of her contingent right to reimbursement from the Debtor based on the alleged claims, *see In re Finn,* 909 F.2d 903, 905 n. 2 (6th Cir.1990), as well as being a holder of a community claim.[15]

**C. *All Preconfirmation Claims Are Discharged***

■ Based on what the Court can discern, Bettye Phillips' claims listed as numbers two through six herein are all based on preconfirmation conduct of the Debtor. Most, if not all, of the alleged wrongful acts by the Debtor towards Bettye Phillips occurred approximately two years prior to the entry of the order confirming the Debtor's plan. Pursuant to 11 U.S.C. § 1141(d)(1), the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not—

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

. . . .

Section 1141(d) discharges a debtor "from any debt (with certain exceptions) that arose before the date of *confirmation.*" *In re Christopher,* 28 F.3d 512 (5th Cir.1994). Thus, whether Bettye Phillips' claims existed prepetition or arose postpetition as the result of the divorce proceeding, the claims were discharged due to her failure to file a proof of claim. The discharge of Bettye Phillips' preconfirmation claims does not violate due process because she had notice of the Debtor's bankruptcy, the claims bar date, and the notices were sufficient to permit her to timely present her claims. *Id.* Therefore, Bettye Phillips is prohibited from pursuing the claims listed as numbers two through six herein. *See* 11 U.S.C. § 524.

---

**15.** Bettye Phillips' argument that she is not a creditor is somewhat disingenuous in that in her Motion for Reconsideration she specifically admitted that she is a creditor.

**D.** *Does Bettye Phillips Have An Informal Proof Of Claim?*

■ As an alternative to her argument that she possessed no prepetition claims against the Debtor, Bettye Phillips asserts that her Motion for Relief from Automatic Stay constitutes an informal proof of claim. Since no objection to the informal proof of claim was filed, Bettye Phillips asserts that she is entitled to rely on the informal proof of claim to protect her rights and interests.

Bettye Phillips is correct that her Motion for Relief from Automatic Stay could constitute an informal proof of claim if certain requirements are met. The requirements are that the motion must apprise the Court of the existence, nature, and amount of the claims (if ascertainable) and make clear Bettye Phillips' intention to hold the Debtor liable for the claims. *See In re Charter Co.,* 876 F.2d 861, 863 (11th Cir.1989); *In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1381–82 (9th Cir.1985); *In re Hansel,* 160 B.R. 66, 71–72 (Bankr.S.D.Tex.1993). "Mere knowledge by the [D]ebtor of [Bettye Phillips'] claim will not suffice to establish the existence of a valid proof of claim." *Charter Co.,* 876 F.2d at 864; *In re Ellington,* 151 B.R. 90, 99 (Bankr.W.D.Tex.1993).

After reviewing Bettye Phillips' Motion for Relief from Automatic Stay, the Court is of the opinion that the motion is insufficient to constitute an informal proof of claim for the claims listed as numbers two through six. The motion states that the stay should be lifted to allow the state court to dissolve the marriage and divide the assets and liabilities of the parties. Based on the broad language in the motion, it could appear that the only claim of Bettye Phillips against the Debtor to be adjudicated in state court is her right to ½ of the community property. The motion is silent regarding claims for right of reimbursement, fraud, breach of fiduciary duty, assault, battery and intentional, knowing or reckless bodily injury. Thus, the Court's order lifting the automatic stay did not address the state court's right to adjudicate these issues. The motion was too vague to apprise the Court of the existence and nature of the various claims now being asserted by Bettye Phillips and her intention to hold the

Debtor liable for the claims. *See In re Hansel,* 160 B.R. at 71–72. Therefore, the Court finds that the Motion for Relief from Automatic Stay did not constitute an informal proof of claim for the claims listed as numbers two through six herein.

**E.** *Does Res Judicata Bar Bettye Phillips From Asserting Informal Proof Of Claim?*

■ As an alternative argument that the Motion for Relief From Automatic Stay did not constitute an informal proof of claim, the Debtor argues that the doctrine of res judicata bars Bettye Phillips from making such an assertion. According to the Debtor, Bettye Phillips should have raised this issue when she filed her Motion for Reconsideration.

■ Res Judicata will bar a subsequent action if: (1) the parties in the instant action are the same as or in privity with the parties in the prior action; (2) the court that rendered the prior judgment was a court of competent jurisdiction; (3) the prior action was terminated with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops,* 24 F.3d 743, 746 (5th Cir.1994); *Agric. Power Partners, Ltd. v. Gen. Elec. Co.,* 20 F.3d 663, 664–65 (5th Cir.1994). In determining whether the subsequent action is identical to the prior action, the Court is required to apply the transactional test. That is, this Court must decide "whether the two actions were based on the same nucleus of operative facts" and not on the legal theories advanced. *Agric. Power Partners, Ltd.,* 20 F.3d at 665; *Eubanks v. F.D.I.C.,* 977 F.2d 166, 171 (5th Cir.1992).

The Court agrees with the Debtor that Bettye Phillips is now barred by res judicata from asserting that she has an informal proof of claim. The sole basis for now arguing that she has an informal proof of claim is to avoid the res judicata effect of the order confirming the Debtor's plan. *See* 11 U.S.C. § 1141(a). However, the appropriate time for Bettye Phillips to have made such an assertion was either at the confirmation hearing or in her timely Motion for Recon-

sideration. The Motion for Reconsideration placed the issue of whether she had claims affected by the plan squarely before the Court. Bettye Phillips clearly was a party to that action. In the Motion for Reconsideration, Bettye Phillips essentially argued that she was not provided proper notice to protect her claims. This Court, which is a court of competent jurisdiction, rejected that argument in the Order Denying Motion for Reconsideration. No appeal of the order was filed. Although Bettye Phillips argued that she was denied due process regarding her claims, she never asserted in the Motion for Reconsideration that her Motion for Relief from Automatic Stay constituted an informal proof of claim. *See Eubanks*, 977 F.2d at 173 (res judicata bars an action that could or *should have* been brought in a former proceeding). This assertion was made for the first time in the instant adversary proceeding, over six months after the entry of the Order Confirming Debtor's Second Plan of Reorganization. The issue of whether Bettye Phillips has an informal proof of claim arises out of the same nucleus of operative facts which were before the Court on her Motion for Reconsideration. Res judicata prevents Bettye Phillips from obtaining a "second bite at the apple" in her attempt to avoid the effect of the Debtor's plan.

██ Further, public policy demands that Bettye Phillips not be allowed to assert that she has an informal proof of claim at this late date. A bankruptcy court's tutelage over a Chapter 11 debtor typically ends shortly after a plan has been confirmed. It is in the overall best interest of all parties in interest to return the debtor out from under the protection of the bankruptcy court as soon as possible. To permit a creditor with full notice of the bankruptcy, such as Bettye Phillips, to sit quietly and not assert any claims while the Debtor's plan is being confirmed and then subsequently "jump in" and scream foul upsets the finality of the confirmation process. The Debtor's plan is or soon should be near substantial consummation which will close this laborious case. By asserting an informal proof of claim postconfirmation and arguing that such claim is valid until objected to could completely undermine the Debtor's plan. Not only is that real possibility prejudicial to the Debtor, but to all the other creditors who properly asserted their claims and who have now relied on the Debtor's plan. Accordingly, not only is Bettye Phillips barred by res judicata from asserting an informal proof of claim, assuming that one existed, the doctrine of equitable estoppel precludes such an assertion.

## CONCLUSION

For the reasons found herein, the Court finds that Bettye Phillips is a creditor with preconfirmation claims against the Debtor, with at least some of the claims arising prepetition. Any cause of action now being asserted by Bettye Phillips based upon preconfirmation conduct of the Debtor was an unsecured claim subject to the claims bar date. The failure by Bettye Phillips to timely assert her claims has resulted in the claims being discharged pursuant to the Debtor's plan. The potential harshness of this decision reflects the consequences of a creditor's failure to file a proof of claim. The Court will enter concurrently a separate Final Judgment in accordance with this opinion.

## AMENDED FINAL JUDGMENT

Before the Court is a complaint filed by Bettye Phillips to obtain declaratory relief regarding potential claims Bettye Phillips may have against the Debtor. For the reasons stated in the Amended Memorandum Opinion being entered concurrently,

IT IS ORDERED that any claim by Bettye Phillips for her right to ½ interest in the community property is not affected by the Debtor's plan of reorganization; FURTHER,

IT IS ORDERED that any claim by Bettye Phillips for her right to maintenance and support is not affected by the Debtor's plan of reorganization; FURTHER,

IT IS ORDERED that all claims based upon preconfirmation conduct of the Debtor are subject to the claims bar date and thus discharged.

IT IS SO ORDERED, ADJUDGED AND DECREED.